CASH, APPELLANT, *v.* CITY OF CINCINNATI ET AL., APPELLEES.

(No. 80-929—Decided June 10, 1981.)

*Mr. Dennis A. Becker,* for appellant.

*Mr. Richard A. Castellini,* city solicitor, *Mr. Daniel J. Schlueter* and *Ms. Nancy H. Simmons,* for appellee city of Cincinnati.

*Messrs. McCaslin, Imbus & McCaslin* and *Mr. Philip J. Marsick,* for appellee Langenheim & Thomson Co.

*Messrs. Rendigs, Fry, Kiely & Dennis* and *Mr. David W. Peck,* for appellee Wray Electric Contracting, Inc.

HOLMES, J.

I.

In the Court of Appeals, the defendants predicated their assignments of error on the argument that the defect in the crosswalk, as alleged by plaintiff, was only a minor imperfection and, as such, was not actionable as a matter of law by plaintiff. In support of that argument, defendants cited prior Ohio case law, emphasizing *Kimball* v. *Cincinnati* (1953), 160 Ohio St. 370, and other cases following, such as *O'Brien* v. *Toledo* (1957), 167 Ohio St. 35; *Gallagher* v. *Toledo* (1959), 168 Ohio St. 508; *Buckley* v. *Portsmouth* (1959), 168 Ohio St. 513; *Amos* v. *Cleveland Heights* (1959), 169 Ohio St. 367; *Kindle* v. *Akron* (1959), 169 Ohio St. 373.

The opinion in *Kimball,* and the case law that followed, applied a standard which involved the degree or extent of the sidewalk variation or imperfection which as a matter of law would not present a jury question on the issue of negligence.[1] Those opinions held in effect that variations in elevation between adjacent sections of a sidewalk, or depressions, or the like, where the defects complained of involved changes in height of one-half of an inch to two inches, were only insubstantial imperfections creating no liability of the municipality to the one who fell while traversing them. In the later case of *Helms* v. *American Legion, Inc.,* (1966), 5 Ohio St. 2d 60, the court extended the rule to privately owned or occupied properties.

The plaintiff, in the Court of Appeals, as well as here, argued that the prior Ohio cases do not set forth or establish an inflexible rule that a defect of less than two inches is *per se* insubstantial, and therefore not actionable as a matter of law. In this regard, plaintiff points out that these opinions noted that each case must be determined in light of its own particular circumstances. Plaintiff refers to the language of the court in *Kimball, supra,* at page 373, as follows:

---

[1] The variation in heights in adjacent sections of sidewalk in *Kimball* was one-half to three-fourths of an inch. In later cases, where the court held the defect to be inconsequential, the variations ranged up to two inches.

"[W]e do not propose to adopt any maximum variation in height as the boundary line between a condition not due to negligence and one which should be submitted to a jury."

However, it should be noted that this court, in most of the subsequent cases as noted, again referred to the insubstantiality of the defect in the sidewalk in terms of inches.

A variable, but temporary, course was charted by a majority of this court when, in *Griffin* v. *Cincinnati* (1954), 162 Ohio St. 232, it was stated in the second paragraph of the syllabus that:

"Where an abrupt raise of a section over an adjoining section of a cracked and broken concrete sidewalk in the downtown section of a city is as high as two inches, and where there is a triangular hole in the corner of a section adjacent to such abrupt raise, it can not be held as a matter of law that such defects are so slight that danger to a pedestrian from their existence may not be reasonably anticipated."

There was a strong dissent in *Griffin,* stating, at page 244, that there had not been evidence to "justify, without a substantial speculation as to the nature and extent of those defects, a conclusion by reasonable minds that that sidewalk, lighted as it was, was not 'in a reasonably safe condition for travel' on foot***."

*Griffin, supra,* was expressly overruled by a majority of this court in *Gallagher* v. *Toledo, supra,* where, in his concurring opinion, Justice Bell stated:

"In the *O'Brien* case this court unanimously followed the unanimous decision in the *Kimball* case holding, in effect, that to impose liability on a municipality for a defect in a sidewalk, that defect must be a substantial and not a slight one."

In all the aforestated cases relative to municipal sidewalks, the basic underlying premise was that municipalities are not insurers of the safety of those pedestrians who use municipal walkways. However, over the years there have been differing expressions concerning the rationality of the application of the principle of "negligence by ruler" in order to determine the substantialness of a defect which would give rise to a jury issue. Whether a difference in elevation between adjoining sections of a public sidewalk of two inches or less is an insignificant, trivial and unsubstantial condition, which is not action-

able as a matter of law, has been questioned in the past by a number of members of this court, as well as some other state courts.[2] Yet, the rule has remained steadfast throughout the years since its pronouncement in *Kimball,* and was even extended to the owners or occupiers of private premises by this court in *Helms, supra,* by a 4 to 3 vote, albeit with marked differences of position from that of the members of the court in *Smith* v. *United Properties, Inc.* (1965), 2 Ohio St. 2d 310.[3]

The basic purpose of the rule, that of narrowing the scope of the municipality's liability in sidewalk defect cases may well have as much merit today as it did when *Kimball* was pronounced. As was stated in the annotation entitled, Degree of inequality in sidewalk which makes question for jury or for court, as to municipality's liability, 119 A.L.R. 161, at 162:

" '***a municipality cannot be expected to maintain the surface of its sidewalks free from all inequalities and from every possible obstruction to mere convenient travel, and slight inequalities or depressions or differences in grade, or a slight deviation from the original level of a walk due to the action of frost in the winter or spring, and other immaterial obstructions or trivial defects which are not naturally dangerous, will not make a municipality liable for injuries occasioned thereby.' "

Whether this so-called *Kimball* rule might be abandoned or revised on another day, we decline to do so within the context of this case. We need not disturb the basic rule in order to reverse the Court of Appeals here in that we determine that this case may be reasonably differentiated from *Kimball* and its progeny which dealt only with a difference in the elevation of slabs of a sidewalk, and conclude that jury questions are

---

[2] See dissenting opinions in *Helms, supra;* dissent in *Harris* v. *Detroit* (1962), 367 Mich. 526, 117 N.W. 2d 32; *Beach* v. *Des Moines* (1947), 238 Iowa 312, 26 N.W. 2d 81; *Parker* v. *Denver* (1953), 128 Colo. 355, 262 P. 2d 553; *Ray* v. *Salt Lake City* (1937), 92 Utah 412, 69 P. 2d 256; *Loughran* v. *New York* (1948), 298 N.Y. 320, 83 N.E. 2d 136; see, also, 24 Univ. of Pitts. L. Rev. 665, 667, and 30 Univ. of Cinn. L. Rev. 539; 119 A.L.R. 161.

[3] *Smith* v. *United Properties, Inc.* [and *Schilliger* v. *Graceland Shoppers Mart, Inc.*] (1965), 2 Ohio St. 2d 310, was decided by a 4 to 3 vote, with a visiting judge, Judge Corrigan, then of the Court of Appeals for Cuyahoga County. In *Helms* v. *American Legion* (1966), 5 Ohio St. 2d 60, with the regularly constituted court, Judge Zimmerman wrote the majority opinion.

reasonably raised here, and that all the attendant circumstances should be considered in determining liability for defects in the public walkway occasioning the injuries.

It is our determination that the circumstances surrounding the excavation occasioning Mrs. Cash's fall do not make that defect insubstantial as a matter of law. The circumstances found here may be reasonably distinguished from the cases establishing the general rule of insubstantialness as found in *Kimball* and other cited cases. Here, the circumstances presented a situation upon which reasonable minds could differ as to whether the crosswalk was reasonably safe for pedestrians in the usual mode of travel. There are ample circumstances presented here to cause reasonable minds to differ as to the existence of a certain danger for pedestrian travel of such crosswalk, so we conclude that the trial court properly left the question of negligence and nuisance to the jury. Two trial judges, at different times, both concluded that the facts permitted reasonable minds to differ on the question of substantiality of the defect. In accord with this belief, the motions for summary judgment, directed verdict, and judgment notwithstanding the verdict were overruled in turn.

We believe that the defect as found in this crosswalk at a busy downtown intersection of one of the state's largest cities necessitates a different stance on what the legal significance of such a defect should be. A pedestrian who approaches such an intersection necessarily has his attention diverted by traffic signal lights, by surrounding vehicular traffic, and by other pedestrian traffic along the same walkway. These conditions would tend to increase the danger of such a defect in this location. The trial court correctly left to the jury the factual issue of Mrs. Cash's reasonable anticipation of these conditions.

Further, the time of day during which Mrs. Cash encountered the defect would reasonably increase the difficulties of approaching such a defect. She tripped in the depression shortly after 11:30 a.m., in the midst of a lunch hour crowd. The many pedestrians which necessarily passed through this crosswalk would likely obstruct other pedestrians' views of this depression. Again, the reasonable anticipation of Mrs. Cash of this aggravating condition was an issue properly left to the jury.

Furthermore, the depression in the present cause was 12 to 14 inches wide and traversed at least three feet of the crosswalk. Such a depression in a crosswalk can hardly be called trivial as a matter of law, even though somewhat less than two inches in depth.

The jury had evidence upon which to base their determination as to whether the defect constituted negligence. Likewise, the court had evidence upon which to base its consideration and conclusion that reasonable minds could differ upon all issues presented.

When the evidence is viewed most favorably to the plaintiff, it supports the conclusion that reasonable minds could differ as to the defendants' negligence. In light of all the circumstances, the Court of Appeals erred in reversing the judgment of the Court of Common Pleas in this action.

Based on all the foregoing, we hold that where the evidence is viewed most favorably to the plaintiff, it supports the conclusion as reached by the trial court, that reasonable minds might differ as to the substantiality of this defect in light of all the surrounding circumstances of the matter.

## II.

As to the issue of the negligence of the plaintiff in not keeping a proper lookout under all the circumstances, and thence falling when she stepped into the depression in the crosswalk, the trial court did not find Mrs. Cash negligent as a matter of law. The trial court properly submitted this question to the jury as to whether walking with the crowd in the manner she did was unreasonable under all the circumstances.

The defendants argue that Mrs. Cash was contributorily negligent for following the crowd too closely and failing to notice the defect in the street. It is uncontroverted that Mrs. Cash did not see the defect before tripping.

The facts established that pedestrian traffic was quite heavy at the intersection of Fifth and Vine Streets, that the plaintiff was behind three rows of pedestrians and directly behind a row of four men taller than her, that she had not seen the depression, and that she looked up and down as she crossed the street.

Reflecting on a pedestrian's duty, this court, in *Grossnic-*

*kle* v. *Germantown* (1965), 3 Ohio St. 2d 96, held in paragraph two of the syllabus:

"A pedestrian using a public sidewalk is under a duty to use care reasonably proportioned to the danger likely to be encountered but is not, as a matter of law, required to look constantly downward***."

The court further held that where a defect is unseen by a plaintiff which results in injury, an issue is presented for the jury as to whether the plaintiff exercised that concern for his own safety which an ordinarily prudent person would employ under similar circumstances. Thus, the affirmative defense of contributory negligence was specifically held to be an issue for the jury. *Grossnickle,* at 103.

Additionally, this court, in *Griffin, supra,* stated, at 238, as follows:

"A pedestrian is required to use his senses to avoid injury while walking on a sidewalk, but this does not mean that he is required as a matter of law to keep his eyes upon the sidewalk at all times. It may be necessary to keep a lookout for traffic and other pedestrians to avoid collision."

We hold that the law of *Grossnickle* and *Griffin* is applicable here, and whether Mrs. Cash should have been maintaining more distance between herself and the other pedestrians, whether she was under the circumstances paying due heed to where she was stepping, and other questions as to whether she was negligent in the manner in which she was walking, were all questions for the jury in this cause.

The well established rule in regard to contributory negligence is that where reasonable minds may reach different conclusions upon any question of fact, such question of fact is for the jury. *Hamden Lodge No. 517* v. *Ohio Fuel Gas Co.* (1934), 127 Ohio St. 469.

It is clear that reasonable minds could, and did in fact, differ as to whether Mrs. Cash was contributorily negligent. Therefore, the issue was properly left to the jury by the trial court, and the Court of Appeals erred in reversing that decision.

Based on all the foregoing, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

CELEBREZZE, C. J., W. BROWN, LOCHER and C. BROWN, JJ., concur.

POTTER and WHITESIDE, JJ., concur in the judgment and in the syllabus in part.

POTTER, J., of the Sixth Appellate District, sitting for P. BROWN, J.

WHITESIDE, J., of the Tenth Appellate District, sitting for SWEENEY, J.

WHITESIDE, J., concurring. Although I concur in the judgment and in part in the syllabus, I must travel a slightly different road to reach that result which I feel is directly inconsistent with *Gallagher* v. *Toledo* (1959), 168 Ohio St. 508, which should be overruled, at least in part.

Considerable reliance is placed upon *Griffin* v. *Cincinnati* (1954), 162 Ohio St. 232, and that case supports the conclusions reached. However, mention was made but no consideration given to the fact that *Griffin* was expressly overruled by a majority of this court in *Gallagher* v. *Toledo, supra,* to the extent that *Griffin* is inconsistent with that case and *O'Brien* v. *Toledo* (1957), 167 Ohio St. 35. The result in this case cannot be reconciled with that in *O'Brien* or *Gallagher, supra,* nor can the result in *Gallagher* be reconciled with that in *Griffin.*

At all times it must be borne in mind that the basic issue presented is whether the defect in the crosswalk is so substantial that reasonable minds could conclude that such defect made the crosswalk unsafe for travel in the usual and ordinary modes. This is the duty of the city imposed by R. C. 723.01 to keep the streets and sidewalks "open, in repair, and free from nuisance." As this court stated in the fourth paragraph of the syllabus of *Taylor* v. *Cincinnati* (1944), 143 Ohio St. 426, R. C. 723.01 (formerly G. C. 3714) "does not enjoin upon municipalities a specific legal requirement, but provides a general rule of conduct and makes negligence the basis of liability for its violation, unless an absolute nuisance is proven to exist." The nature of this duty is set forth in the fifth paragraph of the syllabus of *Taylor* as being a requirement of "reasonable care and vigilance, in view of all the surroundings, to keep such streets and ways in a reasonably safe condition for travel in

the usual and ordinary modes, and does not exact that which is unreasonable or impracticable."

Although there has been some criticism of what has been termed "negligence by ruler," almost every state which has considered liability resulting from street or sidewalk defects has adopted to one degree or another a rule which could be termed "negligence by ruler." See Annotation, Degree of inequality in sidewalk which makes question for jury or for court, as to municipality's liability, 119 A.L.R. 161; and Annotation, Existence of actionable defect in street or highway proper as question for court or for jury, 1 A.L.R. 3d 496.

The necessity of the much criticized "negligence-by-ruler" determination of negligence is readily apparent.[4] In many instances, the only claimed defect is in itself a matter of difference in elevation. Where the only claimed defect is a difference in elevation between two adjoining slabs of a sidewalk, of necessity the dimension becomes important. The question is not "negligence by ruler," but, rather, the extent to which differences in elevation are to be expected and the extent to which they do not render the sidewalk unsafe for travel in ordinary modes. Obviously, there must be situations where reasonable minds can only conclude that the defect is not so substantial as to render the sidewalk unsafe for pedestrian travel. Probably no one would contend that a 1/64-inch difference in elevation between two adjoining slabs of a sidewalk constitutes actionable negligence. The issue is not "negligence by ruler" but, rather, the point at which reasonable minds can reach different conclusions as to whether the sidewalk or crosswalk is reasonably safe for pedestrian travel in the ordinary modes. This has been a most vexing issue for the courts through the years. Some 74 years ago the so-called negligence-by-ruler rule was applied in *Dayton* v. *Glaser* (1907), 76 Ohio St. 471, with respect to vehicular traffic in a street with a great number of holes from three to five inches deep.

Although the judgment reached by this court today is proper, such result can be reached only if some, but not all, of the prior decisions of this court be at least modified. In *Kimball* v. *Cincinnati* (1953), 160 Ohio St. 370, for example, where the

[4] Full consideration was given to the issue in *Kimball* v. *Cincinnati* (1953), 160 Ohio St. 370, at pages 372-373.

variation in adjoining slabs was only one-half to three-fourths of an inch, the sidewalk was crumbled in spots, and the evidence was that the plaintiff "slipped when her left foot was placed in one of the crumbled spots, and that when she brought her right foot past the left foot the toe of her right shoe caught on the raised portion of the joint, causing her to fall," the condition of the sidewalk was considered a slight defect. On the other hand, the next year, in *Griffin* v. *Cincinnati, supra* (162 Ohio St. 232), a majority of the court reached a different conclusion, stating in the second paragraph of the syllabus:

"Where an abrupt raise of a section over an adjoining section of a cracked and broken concrete sidewalk in the downtown section of a city is as high as two inches, and where there is a triangular hole in the corner of a section adjacent to such abrupt raise, it can not be held as a matter of law that such defects are so slight that danger to a pedestrian from their existence may not be reasonably anticipated."

Thus, at that time, there was the *Kimball* rule that a three-fourths inch difference in elevation, coupled with a crumbled sidewalk, is not a substantial defect, and the *Griffin* rule that a difference in elevation between adjoining slabs of two inches, coupled with an adjacent triangular hole, was a defect of such a nature that reasonable minds could reach different conclusions as to whether it was sufficiently substantial to create an unsafe condition for travel in ordinary modes in the downtown section of a city. *Kimball* and *Griffin* are not necessarily incompatible.

However, *Griffin* was repudiated and in effect overruled by the majority of the court in *Gallagher* v. *Toledo, supra* (168 Ohio St. 508), which purported to follow *Kimball,* as well as *O'Brien* v. *Toledo, supra* (167 Ohio St. 35). It is apparent that *O'Brien,* as well as *Gallagher,* are inconsistent with *Griffin* as are many subsequent cases, including *Buckley* v. *Portsmouth* (1959), 168 Ohio St. 513; *Amos* v. *Cleveland Heights* (1959), 169 Ohio St. 367; and *Kindle* v. *Akron* (1959), 169 Ohio St. 373.

In other words, *Griffin* is compatible with *Kimball* and with *Glaser* and the intervening cases, but is incompatible with most of the subsequent cases. The majority herein relies heavily upon *Griffin.* Following *Griffin* necessitates a reversal of

the Court of Appeals and an affirmance of the Court of Common Pleas.[5]

Reasonable minds could conclude that the defect in question was substantial only if the prior rule of law established by the many decisions of this court, except *Griffin,* is somewhat modified. Thus, an appropriate holding would be that, where the sole claimed defect is a difference in the elevation of all or part of two adjoining slabs of a sidewalk, reasonable minds could not conclude that the defect is substantial if the difference in elevation be two inches or less. However, reasonable minds could conclude that a 12 to 14-inch wide, one and one-half inch deep trench extending the width of a crosswalk in a heavily pedestrian-traveled downtown section of a city constitutes a substantial defect, that is, reasonable minds could conclude that the crosswalk under those circumstances is not reasonably safe but is dangerous for travel by pedestrians.[6] Such a conclusion does require at least the modification of *Kimball, O'Brien, Gallagher, Amos* and *Kindle* and any other case holding to the same effect.

Accordingly, the first paragraph of the syllabus should indicate that *Gallagher* v. *Toledo, supra,* is overruled insofar as it overruled *Griffin;* that *Kimball, O'Brien, Amos* and *Kindle* are modified to the extent they are inconsistent herewith; and that *Griffin* v. *Cincinnati, supra,* is approved and followed.

POTTER, J., concurs in the foregoing concurring opinion.

CLIFFORD F. BROWN, J., concurring. It is my view, too, that under the facts in this case we need not disturb the rule

[5] It would be appropriate for this court to approve and follow *Griffin,* while at the same time overruling *Gallagher* which overruled *Griffin.* At the same time, *O'Brien, Buckley, Amos* and *Kindle* must be at least questioned as must many succeeding cases. The same result may well have been reached in many of them because of the issue of contributory negligence.

[6] In other words, the two-inch rule should be limited to differences in elevations between adjoining slabs of a sidewalk. Obviously, there are elevations greater than two inches which, as a matter of law, do not constitute substantial defects. An example would be the curb or a step or steps in a sidewalk.

On the other hand, when we are concerned with trenches dug in a sidewalk, or holes in a sidewalk created by deterioration, the totality of the circumstances, including the portion of the city in which the sidewalk is located, the amount of anticipated traffic and the total nature of the defect must be considered in addition to mere elevation in determining whether reasonable minds could differ upon the question of whether the sidewalk is reasonably safe or dangerous for pedestrian travel.

and standard established in *Kimball* v. *Cincinnati*, (1953), 160 Ohio St. 370, that a variation from one-half to three-fourths of an inch in height of adjacent sections of a sidewalk within a city caused by climate and natural wear and tear is as a matter of law so insubstantial that it does not constitute negligence, or any evidence of negligence, of such city. I would confine this rule to municipal corporations only and not apply it to private contractors who by construction work create similar uneven conditions or depressions in a sidewalk or crosswalk. *Kimball, supra,* should be confined to its particular facts, in view of *Griffin* v. *Cincinnati* (1954), 162 Ohio St. 232, which held that where an abrupt raise of a section over an adjoining section of a cracked and broken concrete sidewalk in a city is as high as two inches, with a triangular hole in the corner of a section adjacent to such abrupt raise, a jury issue of negligence on the part of the municipality exists.

It should be noted that in *Smith* v. *United Properties, Inc.* [and *Schilliger* v. *Graceland Shoppers Mart, Inc.*] (1965), 2 Ohio St. 2d 310, at paragraphs two and three of the syllabus, the pronouncements in *Kimball, supra,* were extended to owners or occupiers of private property, with some modifications, as follows:

"2. The common-law duty of the owner of a shopping center to exercise ordinary care for the safety of its invitees is that degree of care which an ordinarily reasonable and prudent person exercises, or is accustomed to exercise, under the same or similar circumstances.

"3. All the attendant circumstances must be considered in order to determine whether a sidewalk in a shopping center is reasonably safe for the use of invitees and such determination does not depend solely upon the matter of variation in the height of adjacent blocks in such sidewalk."

One year later in *Helms* v. *American Legion, Inc.* (1966), 5 Ohio St. 2d 60, with reference to private property owners or occupiers, the court overruled the *Smith* [and *Schilliger*] decision, *supra,* but expressly retained the entire syllabus thereof, giving the following reason, at page 63, in its opinion:

"* * *We do not disapprove or disturb the syllabus because we recognize that there may be instances of defective surfaces

used by pedestrians or vehicles to which that syllabus could well be applicable."

The *caveat* from all the foregoing cases is that in any given sidewalk defect case, whether involving a municipally controlled sidewalk as in *Kimball, supra,* or a privately owned or controlled sidewalk as in *Smith* [and *Schilliger*] and *Helms, supra,* where natural wear and tear and climate create the uneven condition, the rigid dimensional factor should not be paramount in deciding that a jury issue exists; rather, the dominant factors for consideration are "all the attendant circumstances." See paragraph three of the syllabus in *Smith* [and *Schilliger*], *supra.* See, also, *Helms* v. *American Legion, supra,* at pages 67-69, dissenting opinion, where Judge Paul Brown cogently observed:

"The idea that a trial court may decide on the basis of a physical measurement that a defect in walks or stairways is not actionable appears to be unique to Ohio law.***

"***

"The Supreme Court of Iowa rejected the artificial mechanical application of the yardstick in determining negligence in *Beach* v. *City of Des Moines* [1947], 238 Iowa 312, 26 N.W. 2d 81.

"Colorado called the imposition of such standards, 'basically wrong in so far as they determine negligence solely by inches,' 'improper and error' and 'an absurd situation,' and refused to subscribe thereto. *Parker* v. *City and County of Denver* [1953], 128 Colo. 355, 262 P. 2d 553." See annotation 37 A.L.R. 2d 1187.

Additionally, the defendants, Langenheim & Thomson Company, and Wray Electric Contracting, Inc., who were jointly active through their construction work in creating this crosswalk defect or depression, should not have the benefit of a *Kimball* thimble-dimensional rule where the unevenness resulted from climate and natural wear and tear.

In future sidewalk cases this court should not be barricaded in a judicial hole, wearing the strait jacket of a *per se* dimensional measurement rule as to sidewalk unevenness, unable to be aided by "all attendant circumstances" if the factual posture demands such aid. *Rule* v. *Bay City* (1972), 387 Mich. 281, 195 N.W. 2d 849; *Klein* v. *District of Columbia*

(C.A.D.C. 1969), 409 F. 2d 164, 167; *Seitter* v. *St. Joseph* (Mo. App. 1962), 358 S.W. 2d 263; 1 A.L.R. 3d 496, 500.

This court establishes legal precedent. But it also possesses the power, and has the duty, to promote the continuous growth and progress of the law. The Supreme Court necessarily fashions new legal principles, and expands upon established rules of law so that justice may be done.

For example, Justice Cardozo in the landmark case of *MacPherson* v. *Buick Motor Co.* (1916), 217 N.Y. 382, 111 N.E. 1050, by abrogating the privity of contract concept in negligence and imposing liability on a manufacturer to the customer, departed from earlier precedents which had decided otherwise. Justice Cardozo was aware that earlier case law had held the automobile not so dangerous as to impose a legal duty on the manufacturer to protect the ultimate consumer. But this great jurist noted that "[p]recedents drawn from the days of travel by stage coach do not fit the conditions of travel to-day. The principle that the danger must be imminent does not change, but the things subject to the principle do change. They are whatever the needs of life in a developing civilization require them to be." *MacPherson* v. *Buick, supra,* at 391.

Similarly, this court is not bound by the strait jacket of past precedent. Justice, and not numerous past precedents, is and should be our beacon light. Guided by these standards, we need not reconcile paragraph one of the syllabus with every phrase and clause of all other cases cited in the concurring opinion of Judge Whiteside. Neither can all those cited cases be reconciled with each other.