[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Joan M. Pettibone appeals from a summary judgment entered by the Clark County Court of Common Pleas on her complaint against Howard's Foods, Inc. ("Howard's") and L. Edwin Hoppes, individually, d.b.a. Hoppes Builders ("Hoppes Builders"), and as administrator of the estate of Mary C. Hoppes.
The facts and procedural history are as follows.
According to Pettibone's complaint, on July 18, 1994, after shopping at the Howard's located in the Northridge Shopping Center in Springfield, Ohio, she walked out of the store at the south exit, tripped over "a significant deviation in height between the entrance/exit sidewalk and the parking lot which was created by an improperly constructed curb access ramp," and fell. Pettibone originally named as defendants Howard's and L. Edwin Hoppes, individually and d.b.a. Hoppes Builders, which she believed to be the owner of the shopping center. Pettibone later joined Mary C. Hoppes as a defendant upon discovering that she was the owner of the shopping center. Following Mary C. Hoppes's death, her estate, with L. Edwin Hoppes as administrator, was substituted as a party defendant.
On September 29, 1997, Howard's filed a motion for summary judgment with an attached affidavit from Brad Winner, a manager at Howard's who had been on duty at the time of Pettibone's accident and had inspected the ramp afterwards. Referring to the deposition testimony of Pettibone, Winner, and L. Edwin Hoppes, Howard's argued that it did not owe a duty to Pettibone to correct the minor defect of a one-half inch height deviation between the sidewalk and the ramp because, as a matter of law, the defect was "insubstantial" and because Pettibone had not shown any "attendant circumstances" that could have transformed the insubstantial defect into an actionable claim. Alternatively, Howard's asserted that it did not owe a duty of care to warn of or to correct the "open and obvious" condition. On October 10, 1997, Hoppes filed a motion for summary judgment, asserting that Hoppes Builders did not owe a duty of care to Pettibone because Mary C. Hoppes was the sole owner of the shopping center and that Mary C. Hoppes was not liable for the minor defect that had allegedly caused Pettibone's injuries. Pettibone responded, submitting photographs of the ramp and pointing out excerpts from her deposition testimony and Winner's deposition testimony to support her claim that the defect was "significant and gave rise to a duty to repair and/or warn" and that it was not open and obvious. Howard's and Hoppes both filed reply memoranda.
On May 4, 1998, the trial court entered summary judgment in favor of Hoppes Builders based on lack of ownership of the subject property. Howard's and the estate of Mary C. Hoppes were granted summary judgment for the reason that Pettibone had not shown that attendant circumstances transformed the less-than-two-inch deviation in height into a substantial defect. Pettibone appeals, raising one assignment of error.
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN THAT REASONABLE MINDS COULD DIFFER REGARDING THE SIGNIFICANCE OF THE DEFECTIVE CONDITION AND THE PRESENCE OF ATTENDANT CIRCUMSTANCES.
Pettibone contends that summary judgment was inappropriate because, although the height deviation between the sidewalk and the ramp was less than two inches, reasonable minds could have found that the attendant circumstances surrounding her accident transformed the minor defect into one that was substantial.
Although a premises owner generally owes invitees a duty to exercise ordinary and reasonable care, the owner is "not liable as a matter of law for minor defects in sidewalks and other walkways because these are commonly encountered and pedestrians should expect such variations in the walkways." Stockhauser v.Archdiocese of Cincinnati (1994), 97 Ohio App.3d 29, 32. Ohio courts have developed a rebuttable presumption that an elevation difference between adjoining parts of a sidewalk or walkway that is two inches or less is "insubstantial as a matter of law and thus does not present a jury question on the issue of negligence."Id. at 33, citing Cash v. Cincinnati (1981), 66 Ohio St.2d 319. To rebut this presumption, it must be shown that attendant circumstances rendered the otherwise trivial defect substantial.Id. at 33. Attendant circumstances that transform a minor defect into a substantial one are those that, "taken together, divert the attention of the pedestrian, significantly enhance the danger of the defect, and contribute to the fall." Id. at 33, citing Francev. Parliament Park Townhomes (Apr. 27, 1994), Montgomery App. No. 14264, unreported. Circumstances increasing and decreasing the risk of harm must be considered. Id. at 34.
Pettibone testified at her deposition that, from 1984 through 1994, she had shopped at Howard's about twice a week and had used the curb access ramp several times. The following excerpts from Pettibone's deposition testimony address the attendant circumstances surrounding her fall:
 Q. Do you recall what time the fall occurred, approximately?
 A. I think it was approximately around 11:00 to 12:00 * * * a.m.
Q. You said it was sunny?
A. Beautiful.
Q. So the weather conditions were good?
A. Beautiful.
 Q. Why don't you just explain to me how the accident happened in your own words?
 A. Okay, I had a small package of meat, and went out the door and it was uneven blacktop, and my right toe hit the blacktop, and being so healthy then, I was going right along, I could not veer over because people were going inside the exit, and I fell on the blacktop with my arms this way stiffened, and that's it. A gentleman helped me up, I couldn't do it.
* * *
Q. Which exit did you go out of?
A. South.
 Q. Okay. Was anyone right in front of you when you walked out?
 A. No, if they had been in front of me, I would have hit them.
Q. Was anyone behind you as you walked out?
A. I don't know.
Q. Were you carrying the bag of ground round?
A. Swinging.
* * *
 Q. So you were not carrying anything to the best of your recollection other than this pound of ground round?
A. No, just the meat.
 Q. Okay. On your prior trips to Howard's, did you always or almost always go through the south entrance and leave through the south exit?
A. Yes, the north was too bad.
* * *
 Q. [Were] the conditions [of the south entrance/exit] the same on that date July 18, 1994, as they were on your prior trips to Howard's Foods?
A. I suppose.
* * *
 Q. Were there any foreign substances on the sidewalk near the south entrance of Howard's Foods on the day of the accident?
A. No.
Q. Any foreign objects?
A. No.
Q. Any debris?
A. No.
* * *
 Q. When you were leaving the exit, the south exit of Howard's Foods, could you see the ramp in front of you?
A. Yes, back at the door.
Q. You didn't see foreign objects?
A. No.
Q. Did you see any foreign substances on the ramp?
A. No.
 Q. Now, you claimed earlier that you caught your toe on something, do you know what you caught your toe on?
A. The blacktop.
* * *
 Q. Okay. So if you had chosen to look down you could have seen this, this blacktop that you caught your toe on?
 A. * * * I can't answer. With automobiles to watch for, people coming in the entrance.
Q. Okay, who was coming in the entrance at the time?
A. Shoppers.
Q. How many?
A. I remember three or four.
Q. Did you know any of them?
A. Oh, no.
Q. Did any of them see you fall?
A. I don't know.
 Q. You said automobiles to watch for, was traffic a problem in the area?
 A. Well, they, once in a while they come around and pass in front, and there are trucks going past.
 Q. Did any cars or trucks go past when you were walking out on the day of the accident?
A. I don't think I would be here if there were.
 Q. Were any cars parked near the exit on the day of the accident?
A. In the regular parking area.
Q. Okay, how far away is that from the ramp?
A. About a car and a half away.
Q. Okay.
A. Sometimes two cars away, the distance away.
Pettibone further testified that the shoppers entering Howard's had not distracted her in any way.
According to Winner's deposition testimony, the cement sidewalk bordering Howard's was separated from the asphalt parking lot by a curb of approximately five inches, and the two surfaces were connected by an asphalt curb access ramp. The ramp was bordered by two poles, extended approximately four feet into the parking lot, and was not marked with a warning sign or paint. Winner testified that the ramp had been free of any debris or foreign substances on the day of Pettibone's accident. He stated that the deviation in height between the sidewalk and the ramp was no more than half an inch. Additionally, Winner described Pettibone as a regular shopper.
Several factors lead us to conclude that the trial court correctly found that Pettibone had not shown attendant circumstances diverting her attention, significantly enhancing the danger, and contributing to her accident. Pettibone's testimony that, while exiting Howard's, she had been carrying only one grocery bag by its handles, had not been following anyone, had not been distracted by other shoppers, and had been able to see that the ramp did not contain any foreign substances indicates that her attention had not been diverted from the ramp and that the danger of the height deviation had not been enhanced. See Stockhauser,97 Ohio App.3d at 34; Acord v. Speedee Centers South, Inc. (May 7, 1997), Scioto App. No. 96CA2450, unreported; France, supra. Pettibone's testimony that vehicles generally pass by the ramp "once in a while" and that none had been going past the ramp when she was exiting the store shows that vehicular traffic had not diverted her attention. See Cash, 66 Ohio St.2d at 324; Richardsv. Bowling Sons, Inc. f.k.a. The Glass Hat, Inc. (Jan. 29, 1999), Montgomery App. No. 17375, unreported. Pettibone does not contend that adverse weather conditions impaired visibility or otherwise increased the danger of the defect; rather, she testified that the accident had occurred on a "beautiful" sunny day. See Acord, supra. Furthermore, the risk of the defect was actually decreased by the facts that Pettibone had fallen while stepping from one distinct surface, concrete, to another, asphalt, and that she had shopped at Howard's about twice a week for ten years prior to the accident and had traversed the ramp safely several times previously. See Acord, supra; Rupnik v.Meximilian's Inc. (Dec. 12, 1997), Lake App. No. 97-L-019, unreported.
Pettibone relies on our opinion in Thompson v. Kroger (June 9, 1992), Montgomery App. No. 13248, unreported, to support her position that reasonable minds could differ as to the substantiality of the defect that led to her accident. The plaintiff in Thompson was a grocery shopper who had tripped and fallen over a hole measuring approximately three to four inches in diameter and an inch to an inch and a half in depth. The hole was located at the bottom of an exit ramp that connected the sidewalk to the parking lot. In determining that reasonable minds could differ as to the substantiality of the defect, we considered that, as Thompson approached the ramp, he had been following closely behind a friend and had been carrying a grocery bag in each arm that obstructed his view, that pedestrian and vehicular traffic were general concerns for shoppers exiting the Kroger store, and that his fall had occurred at 9:00 p.m. rather than during daylight hours. Thompson, supra.
Although Pettibone's accident also occurred on a curb access ramp at a grocery store, several factual distinctions exist between this case and Thompson. Unlike Thompson, Pettibone exited the grocery store during daylight hours on a "beautiful" day. While Thompson "carried bags of groceries and at the same time may have had to contemplate vehicular and pedestrian traffic coming in all directions to one central entrance way," Thompson, supra, Pettibone testified that she had been "swinging" only one grocery bag by its handles, that she was not distracted by other shoppers, that vehicles generally passed nearby the ramp only "once in as while," and that none had been doing so as she exited the store. Moreover, Pettibone, unlike Thompson, was not following closely behind anyone who could have obstructed her view of the ramp, which she had used frequently over the course of many years and which had not been more dangerous than normal at the time of her accident. Considering the distinctions between the circumstances attendant to Thompson's and Pettibone's falls, we are not persuaded to follow Thompson in this case. Pettibone's sole assignment of error is overruled.
The judgment of the trial court will be affirmed.
BROGAN, J. and YOUNG, J., concur.
Copies mailed to:
Douglas A. Hess
Christopher F. Johnson
Brian L. Wildermuth
John D. Emerich
Hon. Richard O'Neill