OPINION
Ann Benner Long appeals from the judgment of the Miami County Common Pleas Court in favor of the Village of Covington, Ohio.
The facts underlying this appeal are not seriously in dispute, the legal implications are. On August 12, 1998, at approximately 5:00 p.m. Ann Long stopped by the local VFW on Route 48 to visit her daughter who worked as a bartender at that location. Shortly thereafter, she volunteered to walk up to a local Italian restaurant across the street to get a taco salad for her daughter as well as herself for dinner.
While returning from the restaurant while carrying a purse over her left shoulder and the tacos in a bag on her left arm, Ann tripped over a crack in the sidewalk and fractured her left elbow and hurt her left wrist.
On October 6, 2000, Ann filed her complaint against the Village of Covington. She alleged that the Village was aware of the deteriorated condition of the sidewalk and had a duty to warn of the dangerous condition she encountered. Her husband, John, joined in the lawsuit seeking damages for loss of consortium.
The City answered raising a number of defenses, including contributory negligence and statutory immunity.
The City moved for summary judgment and filed a deposition taken of Ann Long as upon cross-examination. In the deposition, Ann testified as follows in pertinent part:
 Q. As you were proceeding back toward the VFW were you watching the sidewalk?
A. Yeah, I mean I wasn't concentrating on it.
 Q. Okay, But you were looking where you were walking?
A. Yes.
Q. Was there any grass in the crack that you saw?
A. I don't think so.
Q. Was there dirt?
A. Yes.
Q. Okay. Did you see that before you tripped?
A. I had noticed it as I was approaching it.
Q. Where was the dirt located?
A. All in front of it.
 Q. Okay. Could you see the raised portion of the sidewalk?
A. I saw it, yes.
 Q. You could see the distinction between the two segments of the sidewalk?
A. Yes.
Q. And saw that some of it was raised?
A. Yes.
 MR. MONKS: Excuse me. At which point in time? Prior to the fall?
CONTINUING BY MR. DIXON:
Q. Prior to the trip?
A. Yeah.
Q. Correct?
Q. Correct."
MR. MONKS: Thank you.
CONTINUING BY MR. DIXON:
 Q. Do you know how wide this sidewalk is, your estimate?
 A. Not really. I'd say two and a half, three feet. I'm not good at —
 Q. Okay. As you were proceeding north going down the hill and saw the dirt and the crack, did you make any attempt to get over the crack with your foot?
 A. I don't remember making a conscious effort to do it. I didn't really think it was that high, and so I just figured I could step over it. I didn't consciously stop and step over it.
 Q. Would you say that you have a normal gait that you usually walk?
A. Yes.
 Q. Did you change your gait after you saw this crack or the dirt in the sidewalk?
A. I don't think so.
 Q. Did you see the cracking all the way across the sidewalk?
A. Yes.
Q. And could you tell that it was raised?
A. Yeah. I could tell it was raised.
Q. All the way across the sidewalk?
A. Yes.
 Q. But still after seeing the crack and the raised portion of the sidewalk, your right toe struck and caused you to fall?
A. Right.
 Q. Did the taco salad block any of the view of the sidewalk as you were walking down the sidewalk?
A. No.
 Q. Were there any unusual weather conditions that prevented you from seeing the sidewalk in front of you?
A. No.
 Q. Is it fair to say that the time of the accident was probably before 5:30 p.m.?
A. Correct.
(Deposition at 41-43).
Mrs. Long took color photographs of the general location, and the specific sidewalk section which caused her fall, in October 1998, less than one month after her accident. Reproductions of the photographs were designated Exhibits 7-12 to her deposition of August 21, 2001.
Ms. Long provided the report of Larry Dehus, a forensic scientist, who concluded that the height differential of one and one quarter (1 1/4) inches between the two sidewalk sections was sufficient in his opinion to cause a significant hazard to pedestrians.
In granting summary judgment to the Village, the trial court noted that Ms. Long tripped on a sidewalk where the elevation between the two slabs of concrete was 1 ½" in height. The Court noted that the Ohio Supreme court has adopted the "two inch" rule which operates a presumption that height differences on public sidewalks of two inches or less are insubstantial. The court noted that there were no "attendant circumstances" present in this case which would rebut the two inch presumption. The court also noted that Ms. Long saw the crack, misjudged her step and hit her toe on the raised portion of the sidewalk.
In finding that there were no attendant circumstances which would overcome the presumption of insubstantiality, the trial court noted that there were no unusual weather conditions and Ms. Long was not at the intersection when she began looking for traffic and then fell. The court found that the evidence did not establish that the circumstances surrounding this trip and fall created a greater than normal risk of injury to a pedestrian. The court noted that a pedestrian must assume some personal responsibility for watching where he is walking.
In a single assignment of error, Ann Long contends the trial court erred in sustaining the Village's motion for summary judgment because she argues there was a jury question whether attendant circumstances existed to ameliorate the two inch rule.
In Kimball v. Cincinnati (1953), 160 Ohio St. 370, the Ohio Supreme Court held that the variation from one-half to three-fourths of an inch in the heights of adjacent sections of a sidewalk is a slight defect commonly found in sidewalks, and the municipality is not guilty of a violation of the duties imposed upon it by the General Code by reason of the existence of the defect.
In Cash v. Cincinnati (1981), 66 Ohio St.2d 319, the Ohio Supreme Court held that reasonable minds could differ as to whether a 12 to 14 inch wide, 1-1 ½ deep, excavation extending into the width of a crosswalk in a heavily pedestrian-traveled downtown section of the city was so substantial that such defect rendered the crosswalk unsafe for travel in the usual and ordinary mode. Justice Holmes wrote the following on behalf of the court:
 In all the aforestated cases relative to municipal sidewalks, the basic underlying premise was that municipalities are not insurers of the safety of those pedestrians who use municipal walkways. However, over the years there have been differing expressions concerning the rationality of the application of the principle of "negligence by ruler" in order to determine the substantialness of a defect which would give rise to a jury issue. Whether a difference in elevation between adjoining sections of a public sidewalk of two inches or less is an insignificant, trivial and unsubstantial condition, which is not actionable as a matter of law, has been questioned in the past by a number of members of this court, as well as some other state courts. Yet, the rule has remained steadfast throughout the years since its pronouncement in Kimball, and was even extended to the owners or occupiers of private premises by this court in Helms, supra, by a 4 to 3 vote, albeit with marked differences of position from that of the members of the court in Smith v. United Properties, Inc. (1965), 2 Ohio St.2d 310.
 The basic purpose of the rule, that of narrowing the scope of the municipality's liability in sidewalk defect cases may well have as much merit today as it did when Kimball was pronounced. As was stated in the annotation entitled, Degree of inequality in sidewalk which makes question for jury or for court, as to municipality's liability, 119 A.L.R. 161, at 162:
 "`* * *a municipality cannot be expected to maintain the surface of its sidewalks free from all inequalities and from every possible obstruction to mere convenient travel, and slight inequalities or depressions or differences in grade, or a slight deviation from the original level of a walk due to the action of frost in the winter or spring, and other immaterial obstructions or trivial defects which are not naturally dangerous, will not make a municipality liable for injuries occasioned thereby.'"
 Whether this so-called Kimball rule might be abandoned or revised on another day, we decline to do so within the context of this case. We need not disturb the basic rule in order to reverse the Court of Appeals here in that we determine that this case may be reasonably differentiated from Kimball and its progeny which dealt only with a difference in the elevation of slabs of a sidewalk, and conclude that jury questions are reasonably raised here, and that all the attendant circumstances should be considered in determining liability for defects in the public walkway occasioning the injuries.
* * *
 We believe that the defect as found in this crosswalk at a busy downtown intersection of one of the state's largest cities necessitates a different stance on what the legal significance of such a defect should be. A pedestrian who approaches such an intersection necessarily has his attention diverted by traffic signal lights, by surrounding vehicular traffic, and by other pedestrian traffic along the same walkway. These conditions would tend to increase the danger of such a defect in this location. The trial court correctly left to the jury the factual issue of Mrs. Cash's reasonable anticipation of these conditions.
 Further, the time of day during which Mrs. Cash encountered the defect would reasonably increase the difficulties of approaching such a defect. She tripped in the depression shortly after 11:30 a.m., in the midst of a lunch hour crowd. The many pedestrians which necessarily passed through this crosswalk would likely obstruct other pedestrians' views of this depression. Again, the reasonable anticipation of Mrs. Cash of this aggravating condition was an issue properly left to the jury.
 Furthermore, the depression in the present case was 12 to 14 inches wide and traversed at least three feet of the crosswalk. Such a depression in a crosswalk can hardly be called trivial as a matter of law, even though somewhat less than two inches in depth.
 66 Ohio St.2d 322-325.
A pedestrian using a public sidewalk is under a duty to use care reasonably proportionated to the danger likely to be encountered, but is not, as a matter of law required to look constantly downward under all circumstances even when she has prior knowledge of a potential hazard.Grossnickle v. Germantown (1965), 2 Ohio St.2d 96, syllabus 2. The court held that whether the care and attention ordinarily required of a pedestrian using a public sidewalk and approaching an intersection are diverted by weather conditions, traffic hazards, and the apparently safe conditions of the surface of the walk so as to excuse her from observing a hazard, which she would otherwise have a duty to see and the potential danger of which she had prior knowledge, is a question of fact for the jury. Id., at syllabus 3.
In Stockhauser v. Archdiocese of Cincinnati (1994), 97 Ohio App.3d 29, we upheld the trial court's grant of summary judgment where a pedestrian, who tripped over the raised portion of a curb, which was less than two inches in height at a church festival, failed to rebut the presumption that defect in walking was "insubstantial" as a matter of law. The "two-inch" presumption may be rebutted by showing attendant circumstances sufficient to render the defect substantial. We discussed what constitutes an attendant circumstance:
 To render a minor defect substantial, attendant circumstances must not only be present, but must create a greater than normal, and hence substantial, risk of injury. The attendant circumstances must, taken together, divert the attention of the pedestrian, significantly enhance the danger of the defect, and contribute to the fall. Both circumstances contributing to and those reducing the risk of the defect must be considered. The totality of the circumstances of each case must be examined to determine if, as a whole, they create a substantial defect.
 Id., at 33-34.
If reasonable minds can differ as to whether the attendant circumstances are such as to render the defect substantial, the question of negligence must be left to the jury. Turner v. Burndale Gardens Co. (December 18, 1991), Montgomery App. No. 12807, unreported.
We agree with the trial court that there were no attendant circumstances present that would have diverted Ms. Long's attention. The uneven sidewalk was not located at an intersection where Ms. Long could be expected to cross legally. In any event, even if attendant circumstances were present, those circumstances must cause the diversion of the pedestrian's attention so that he or she fails to see the uneven pavement. In this case, Ms. Long candidly admitted she saw the raised portion of the sidewalk prior to falling yet she still somehow caught her foot in the uneven pavement.The Village of Covington had no duty to protect Ms. Long from the danger of an uneven pavement when no attendant circumstances presented her from seeing the uneven pavement and when she in fact did see it. The assignment of error must be overruled.
The judgment of the trial court is Affirmed.
WOLFF, P.J., and GRADY, J., concur.