OPINION
{¶ 1} Daniel and Carrie Henry appeal from the Montgomery County Common Pleas Court's entry of summary judgment against them on their complaint, which set forth a negligence claim and a derivative loss-of-consortium claim against appellee Marriott Hotel Services, Inc.
 {¶ 2} The negligence claim stems from Mr. Henry's fall on a walkway outside the Marriott shortly after midnight on December 25, 1999. The fall allegedly was caused by an uneven crack in the walkway. On October 29, 2002, the trial court sustained a motion for summary judgment filed by Marriott and entered final judgment against the Henrys. (Doc. #39). In so doing, the trial court found that the walkway defect was insubstantial as a matter of law and that the evidence did not create a genuine issue of material fact as to whether attendant circumstances transformed the defect into a substantial one. As a result, the trial court concluded that Marriott was not liable for Mr. Henry's injury. In light of that ruling, Mrs. Henry's derivative loss-of-consortium claim necessarily failed as well.
 {¶ 3} The Henrys subsequently filed a timely notice of appeal, advancing two assignments of error. In their first assignment of error, they contend that summary judgment was inappropriate because genuine issues of material fact exist as to whether attendant circumstances rendered the sidewalk defect unreasonably dangerous. In their second assignment of error, the Henrys argue that the Ohio Supreme Court inTexler v. D.O. Summers Cleaners Shirt Laundry Co., 81 Ohio St.3d 677,1998-Ohio-602, abrogated the so-called "two-inch rule," upon which the trial court relied to find the walkway defect insubstantial.
 {¶ 4} We review the appropriateness of summary judgment de novo.Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588. "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." Zivich v. Mentor Soccer Club, Inc., 82 Ohio St.3d 367, 369-70,1998-Ohio-389 (internal citations omitted). With this standard in mind, we find no merit in the Henrys' first assignment of error.
 {¶ 5} In order to recover damages for negligence, the Henrys must establish that: (1) Marriott owed a duty to conform its conduct to a standard of ordinary care; (2) Marriott breached that duty; and (3) the breach proximately caused an injury to Mr. Henry. Texler, supra, at 681. In Stockhauser v. Archdiocese of Cincinnati (1994), 97 Ohio App.3d 29,32-33, we examined the duty of care that a business owner owes to invitees relating to its walkways and sidewalks:
 {¶ 6} "Generally, owners of a premises owe a duty to invitees to exercise ordinary and reasonable care, including maintaining the premises in a reasonably safe condition and warning invitees of latent defects of which the owner should know. Scheibel v. Lipton (1951), 156 Ohio St. 308, 46 O.O. 177, 102 N.E.2d 453. However, municipalities and private landowners are not liable as a matter of law for minor defects in sidewalks and other walkways because these are commonly encountered and pedestrians should expect such variations in the walkways. Kimball v.Cincinnati (1953), 160 Ohio St. 370, 52 O.O. 237, 116 N.E.2d 708;Gallagher v. Toledo (1959), 168 Ohio St. 508, 7 O.O.2d 364, 156 N.E.2d 466;Kindle v. Akron (1959), 169 Ohio St. 373, 8 O.O.2d 408, 159 N.E.2d 764;Helms v. Am. Legion, Inc. (1966), 5 Ohio St.2d 60, 34 O.O.2d 124,213 N.E.2d 734.
 {¶ 7} "Courts developed the rule that a difference in elevation between adjoining portions of a sidewalk or walkway that is two inches or less in height is considered insubstantial as a matter of law and thus does not present a jury question on the issue of negligence. In Cash v.Cincinnati (1981), 66 Ohio St.2d 319, 20 O.O.3d 300, 421 N.E.2d 1275, the court clarified the `two-inch' rule, stating that courts must also consider any attendant circumstances in determining liability for defects in the walkway. Id. Thus, Cash established a rebuttable presumption that height difference of two inches or less are insubstantial as a matter of law. The presumption may be rebutted by showing attendant circumstances sufficient to render the defect substantial. Id.; Turner v. BurndaleGardens Co. (Dec. 18, 1991), Montgomery App. No. 12807, unreported, 1991 WL 270662."
 {¶ 8} As we observed in Stockhauser, the rule in Ohio is that business owners have no duty to repair a defect measuring two inches or less unless attendant circumstances exist making it reasonably foreseeable that the defect will cause an injury. The phrase "attendant circumstances" defies precise definition. However, we have recognized that it means "any distraction that would come to the attention of the pedestrian in the same circumstances and reduce the degree of care an ordinary person would exercise at the time." France v. Parliament ParkTownhomes (April 27, 1994), Montgomery App. No. 14264; see alsoStockhauser, supra. We also have noted that attendant circumstances may include "`the condition of the sidewalk as a whole, its pedestrian traffic volume, visibility of the defect, and whether the accident site was such that one's attention could easily be diverted.'" Goldshot v.Romano's Macaroni Grill, Montgomery App. No. 19023, 2002-Ohio-2159, quoting Hughes v. Kozak (Feb. 22, 1996), Cuyahoga App. No. 69007. Finally, when evaluating attendant circumstances, we have recognized that all circumstances, favorable and unfavorable to the landowner, should be considered. Id.
 {¶ 9} In the present case, the trial court determined that the walkway defect was less than two inches deep. This determination was supported by uncontroverted evidence, and the Henrys do not challenge it on appeal. As a result, the trial court properly recognized a rebuttable presumption that the walkway defect was insubstantial as a matter of law. The crucial issue on appeal is whether the trial court also properly found no genuine issue of material fact as to the existence of attendant circumstances to rebut the presumption.
 {¶ 10} The Henrys argue that the trial court did not consider all of the attendant circumstances surrounding Mr. Henry's fall outside of the Marriott. The primary additional attendant circumstance cited by the Henrys is the alleged existence of an "optical illusion" that made the walkway defect "invisible" and rendered it unreasonably dangerous. In support of this argument, the Henrys direct us to photographs depicting the specific location of the accident. The photographs and Mr. Henry's deposition testimony indicate that he walked across a driveway and stepped up over a yellow-painted curb onto a paved walkway. The record reveals the existence of a less-than-two-inch height differential where the curb edge meets the paved walkway, with the curb edge being roughly an inch higher than the walkway. As a result, unlike individuals who catch their toe and trip when encountering a raised area in a sidewalk, Mr. Henry did the opposite-he fell while stepping from an area of slightly higher elevation (the curb edge) onto an area of slightly lower elevation (the paved walkway). In his deposition testimony, Mr. Henry attributed his accident to a "high heel effect" that caused him to lose his balance and fall forward.
 {¶ 11} Photographs of the walkway defect suggest that it is more easily seen when viewed from the walkway looking toward the curb rather than when viewed, as Mr. Henry encountered it, from the curb looking toward the walkway. In other words, the defect is perhaps more evident when standing on the walkway and looking at the raised curb edge. Having examined the photographs, however, we cannot agree with the Henrys' assertion that any "optical illusion" obscured the defect or rendered it "invisible." As an initial matter, we note that the particular photograph depicting the defect as Mr. Henry perceived it was taken at a distance of several feet. Given the two-dimensional nature of the photograph, we question its ability accurately to depict the slight height differential at issue in this case as it would have appeared to Mr. Henry in person. In the photograph, the curb and the walkway do appear to meet smoothly. See Appellants' Brief at Exh. 1. We note, however, that when viewed from the opposite direction, the top of the curb and the driveway also appear to meet smoothly, despite Mr. Henry's admission that the driveway wasfour inches lower than the top of the curb. See Appellants' Brief at Exh. 2. When viewed in person, we harbor no doubt that a person stepping from the curb onto the driveway would perceive the four-inch drop, yet it is not discernable in the photograph. As a result, we find the Henrys' photographs to be of limited usefulness.
 {¶ 12} In any event, even if the walkway defect were difficult to observe at a distance of several feet, the record fails to reveal anything that would have obscured Mr. Henry's view or ability to perceive it as he drew closer. Although it was dark outside, there was some lighting in the area and Mr. Henry admitted that he could see where he was going. He also admitted that there were no other people around and no cars driving through the parking lot. In short, Mr. Henry admitted in his deposition testimony that nothing distracted him while he was walking.[1]
(Henry depo. at 103).
 {¶ 13} In essence, the Henrys' "optical illusion" argument suggests that an insubstantial height differential is more difficult to perceive when approached from the "high side" than it is when approached from the "low side," and that it therefore poses a significant risk of injury. We decline to hold, however, that the mere direction from which a person approaches a walkway defect constitutes an attendant circumstance sufficient to justify imposing liability on the landowner, particularly under the facts of the present case. Such a ruling presumably would render a landowner liable for an otherwise-trivial defect fifty percent of the time.
 {¶ 14} The Henrys also cite three other "attendant circumstances" that allegedly rendered the walkway defect unreasonably dangerous: (1) the defect was found in an unexpected area; (2) the area where Mr. Henry fell had poor lighting; and (3) Mr. Henry encountered a four-inch step up over the curb immediately before reaching the walkway defect. With regard to the location of the defect, the Henrys reason that a person would not expect to find a walkway defect at "one of the area's most expensive hotels." We disagree. "That variation in height of sections of sidewalk is a condition existing in practically all parts of every city is universally known." Kimball, supra, at 373. This is true even of expensive hotels. With regard to the lighting conditions at the time of Mr. Henry's fall, he admitted in his deposition testimony that he could see where he was going. In any event, even if the lighting was dim, poor lighting alone cannot transform a minor defect into a substantial one.Goldshot, supra. If the rule were otherwise, "liability would be extended to nearly all homeowners or business owners for injury to anyone who happens to walk on their property after daylight hours." Russell v.Creatif' Catering, Inc. (Dec. 4, 1998), Montgomery App. No. 17031.
 {¶ 15} In the present case, the lighting may have been dim, but Mr. Henry admitted that it was adequate for him to see. Furthermore, we find no other attendant circumstances, even viewed in conjunction with the arguably poor lighting, sufficient to cause the trivial walkway defect to become a substantial one. The remaining attendant circumstance cited by the Henrys is the fact that Mr. Henry encountered the defect immediately after stepping from the driveway onto the curb.[2] If anything, the presence of the brightly painted curb, which Mr. Henry admittedly saw, likely would prompt a person to look down, where he would observe the uneven curb edge and adjoining walkway. Rather than obscuring the defect, the existence of a brightly painted curb likely would draw attention to it. As a result, we are unpersuaded that the presence of the curb constitutes a negative attendant circumstance.
 {¶ 16} Based on the foregoing analysis, we conclude that the trial court properly found no genuine issue of material fact as to the existence of attendant circumstances to rebut the presumption that the walkway defect was insubstantial as a matter of law. The Henrys' first assignment of error is overruled.
 {¶ 17} In their second assignment of error, the Henrys argue that the Ohio Supreme Court in Texler, supra, abrogated the "two-inch rule" upon which the trial court relied. According to the Henrys, Texler
mandates a comparative negligence analysis in lieu of the trial court's determination that Marriott had no duty to repair a walkway defect less than two inches deep.
 {¶ 18} Upon review, we find this assignment of error to be unpersuasive. As the Henrys point out, in the wake of Texler, some courts did interpret that decision as abrogating the "open-and-obvious doctrine," which generally provides that a landowner has no duty to warn of potential hazards that are "open and obvious." As Marriott properly notes, however, the present case concerns the "two-inch rule" rather than the "open-and-obvious doctrine." Although the rule and the doctrine are not the same, they share a key characteristic insofar as they both relieve a landowner of a duty to warn of certain potential hazards. Thus, if Texler abrogated the open-and-obvious doctrine in favor of a comparative negligence analysis, a fair argument could be made that it also abrogated the two-inch rule in favor of such an analysis. Indeed, the Henrys appear to make this argument.
 {¶ 19} We note, however, that on June 4, 2003, the Ohio Supreme Court decided Armstrong v. Best Buy Co., Inc., 99 Ohio St.3d 79,2003-Ohio-2573, and held that the open-and-obvious doctrine remains viable in Ohio. As a result, where a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on its premises, and a comparative negligence analysis is not warranted. Id. at 81-82. In light of Armstrong, we find no merit in the Henrys' argument. Given the Ohio Supreme Court's determination that Texler did not abrogate the open-and-obvious doctrine, we discern no basis for finding that it abrogated the two-inch rule. Accordingly, we overrule the Henrys' second assignment of error and affirm the judgment of the Montgomery County Common Pleas Court.
Judgment affirmed.
FAIN, P.J., and WOLFF, J., concur.
[1] In their appellate brief, the Henrys suggest that a "misty appearance" may have hampered Mr. Henry's visibility. In his deposition testimony, however, Mr. Henry did not describe the mist as something that hindered his visibility. He described only a "mist" on the ground that caused some wetness. (Henry depo. at 70-73, 96).
[2] In their reply brief, the Henrys cite one additional attendant circumstance, noting that "it was Christmas." In our view, however, Ohio law did not impose on Marriott a seasonal duty to repair an otherwise-trivial defect in its walkway because Christmas had arrived.