Appellant Betty Sadey appeals a decision by the trial court in favor of Appellee Metromedia Steakhouses in her action for injuries sustained when she fell on a pedestrian ramp while leaving a Ponderosa Restaurant. Sadey assigns the following error for our review:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY GRANTING DEFENDANTS-APPELLEES' MOTION FOR SUMMARY JUDGMENT WHEN GENUINE ISSUES OF MATERIAL FACT EXIST AND REASONABLE MINDS CAN CONCLUDE THAT DEFENDANTS-APPELLEES ARE LIABLE FOR PLAINTIFFS-APPELLANTS' SERIOUS AND PERMANENT INJURIES CAUSED BY DEFENDANTS-APPELLEES' DANGEROUS AND DEFECTIVE PEDESTRIAN RAMP.
Having reviewed the record and the legal arguments of the parties, we reverse the decision of the trial court. The apposite facts follow.
On November 8, 1993, Betty Sadey went to a Ponderosa restaurant in Garfield Heights, Ohio along with her daughter, daughter-in-law, and four grandchildren. Upon exiting the restaurant, she walked down a concrete ramp leading to the parking lot. When she had walked approximately halfway down the ramp, she tripped and fell to the ground, breaking her ankle in four places.
On November 2, 1995, Sadey filed a complaint against Metromedia Steakhouses Company L.P., Metromedia Steakhouse No. 886, Brauvin Income Properties L.P., Brauvin Corporate Lease Program IV, L.P., and Brauvin Realty Advisors, Inc. ("Metromedia") seeking damages for her injuries. Her husband added a loss of consortium claim. The defendants filed a joint answer raising the following defenses: failure to state a claim upon which relief can be granted; contributory negligence; assumption of risk; and failure to join necessary and/or indispensable parties.
Metromedia took the depositions of Betty Sadey, Laura Lukehart (Sadey's daughter), Rebecca Sadey (Sadey's daughter-in-law), Mark Hudson (a Ponderosa server named Mark Hudson who witnessed Sadey's fall), and Kevin Haxton (the General Manager of the Garfield Heights Ponderosa).
On December 11, 1997, Metromedia filed a motion for summary judgment alleging that Sadey failed to prove her negligence claim because she was unable to identify the cause of her fall; that the condition of the ramp was open and obvious such that Sadey could have reasonably been expected to protect herself therefrom; that the alleged cause of the fall was a trivial imperfection and an insubstantial defect that did not raise a jury question as to negligence; that Richard Sadey failed to present evidence in support of his loss of consortium claim; and that no genuine issues of material fact existed for trial.
In her response to the motion for summary judgment, Sadey maintained that the defect in the pavement which caused her fall was a raised area in the concrete approximately one foot in diameter where a post had apparently been removed. She also argued that she recognized the raised area as the cause of her fall immediately after she fell. At her deposition, Sadey described what caused her fall as follows:
 Q: Do you know what the thing was that your foot caught on?
 A: Yes, a pole apparently that used to be there. There was like a hump there.
(Tr. 73.)
Sadey also attached the deposition of Ponderosa employee Mark Hudson who stated that he, too, had tripped on the ramp before. He added that he had seen a lot of customers tripping over the ramp both before and after Sadey's fall.
Attached to Sadey's brief opposing Metromedia's motion for summary judgment was the affidavit of James Madden, a professional engineer, which contained the following opinion:
 My inspection of the sidewalk reveals that there are two metal poles near the north side of the ramp. One is at the sidewalk end of the ramp and the other is near the parking lot end of the ramp. These poles are set in concrete. There is the apparent remnant of a third pole near the north side of the ramp approximately half way between the other two poles. This pole is terminated at the surface of a concrete foundation. The top of this foundation is approximately l 1/2 inches higher than the adjoining ramp. The foundation is approximately 1 foot in diameter.
 It is my opinion that the concrete foundation for the apparently removed post was and is a trip hazard, and is a clearly foreseeable trip hazard by those familiar with its location. Further, it is my opinion that the foundation would not be obvious to an infrequent user of the ramp.
(Madden Affidavit at Paragraphs 13 and 15.)
The trial court granted Metromedia's motion for summary judgment. This appeal followed.
Summary judgment may be granted only if no genuine issue of material fact exists. Civ.R. 56 (C). Our standard of review for summary judgment is the same as that of the trial court. Consequently, we review cases de novo. Brown v. Scioto Cty Bd ofCommrs. (1993), 87 Ohio App.3d 704, citing Midwest Specialties,Inc. v. Firestone Co. (1988), 42 Ohio App.3d 6. In applying the de novo standard, we review the trial court's decision independently and without deference to the trial court's determination. Id. at 711.
Summary judgment is appropriate when the following have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in its favor. Brown, supra, citing Bostic v. Connor (1988), 37 Ohio St.3d 144,146; cf., also State ex rel. Coulverson v. Ohio AdultParole Auth. (1991), 62 Ohio St.3d 12, 14; Civ.R. 56 (C).
The burden of showing no genuine issue as to any material fact is on the party who requested the summary judgment. Dresher v.Burt (1996), 75 Ohio St.3d 280, citing Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, citing Hamlin v.McAlpin Co. (1964), 175 Ohio St. 517, 519-520. However, the non-moving party has the initial burden of showing a genuine issue of material fact for trial. Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 115. See Dresher v. Burt, supra at 295, (limiting syllabus 3 of Wing v. Anchor Media, Ltd. of Texas (1991),59 Ohio St.3d 108.) An issue is genuine only if the evidence is such that a reasonable jury could find for the non-movant.Anderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242.
In order to defeat a motion for summary judgment in a negligence action based on a slip-and-fall accident, the plaintiff must identify the existence of a duty owed him by the defendant. Taggart v. Professional Maintenance of Columbus, Inc.
(August 12, 1993), Franklin App. No. 93AP-504, unreported. She must also demonstrate sufficient evidence upon which reasonable minds could differ as to whether there was a breach of that duty which proximately caused the plaintiff's injuries. Id. See alsoHughart v. Greenfield Research, Inc. (October 8, 1991), Highland App. No. 772, unreported, and Daher v. Sears, Roebuck Company
(November 2, 1989), Cuyahoga App. No. 57189, unreported, citingKeister v. Park Centre Lanes (1981), 3 Ohio App.3d 19 at syllabus.
In its motion for summary judgment, Metromedia claimed the concrete foundation constituted a trivial imperfection and an insubstantial defect that could not be found to constitute negligence on their part. In Kimball v. City of Cincinnati
(1953), 160 Ohio St. 370, 373, the Ohio Supreme Court stated "municipalities are not to be charged with negligence merely because of some slight variation in the heights of sections of a sidewalk." Although the Kimball court stopped short of adopting a maximum height variation that would constitute negligence, the "two inch" rule was established in Cash v. City of Cincinnati
(1981), 66 Ohio St.2d 319, 330.
 [W]here the sole claimed defect is a difference in the elevation of all or part of two adjoining slabs of a sidewalk, reasonable minds could not conclude that the defect is substantial if the difference in elevation be two inches or less.
The "two inch" rule creates a presumption that a defect of two inches or less is insubstantial. However, this presumption may be rebutted if the plaintiff shows sufficient attendant circumstances to indicate the defect is substantial. Stockhauserv. Archdiocese of Cincinnati (1994), 97 Ohio App.3d 29, 33. See also Schill v. Pleasant Valley Apartments (December 11, 1997), Cuyahoga App. No. 71954, unreported; Michals v. Biskind RealtyCompany, Inc. (May 29, 1997), Cuyahoga App. No. 71308, unreported. A relevant attendant circumstance is a situation which creates a greater than normal risk of injury and would include any distraction that would command the attention of a similarly situated pedestrian, significantly enhance the danger of the defect, and contribute to the fall. Schill. See alsoMichals; Stockhauser at 33.
Metromedia argues the Kimball-Cash presumption would apply to this case because the evidence revealed that the concrete foundation was only one and one-half inches higher than the surrounding pavement. However, we must proceed to determine whether the attendant circumstances surrounding Sadey's fall were sufficient to render the defect in the parking lot substantial.
In her deposition, Sadey stated the restaurant was crowded on the day of her fall and that, as she left the restaurant, she was holding her grandchildren's hands in order to keep them from running out into the parking lot. In Cash, the court recognized that the existence of heavy vehicular and pedestrian traffic may so divert a person's attention as to increase the danger of a defect in the surface of a walkway. Cash at 324. As she walked down the ramp, she noticed a crack in the concrete at the bottom of the ramp and was trying to protect her grandchildren so they would not trip on it. After considering Sadey's deposition testimony along with James Madden's opinion that the defect on the ramp was a trip hazard, we conclude that Sadey has shown sufficient attendant circumstances to establish an issue of fact for trial as the whether the defect in the pavement was substantial.
We also conclude that a genuine issue of fact existed as to Whether the defect in the pavement was open and obvious. Sadey's expert, James Madden, stated that the concrete foundation would not be obvious to an infrequent user of the ramp. (Madden Deposition at Paragraph 15.) Sadey stated that she did not see it.
 Q: As you were going down the ramp, this place where there had been a post —
A: Yes.
 Q: — did you see that with your eyes before you came in contact with it?
A: No, I don't believe.
Q: Wasn't that in your field of vision?
 A: As I said, I looked all around at the time. I didn't notice anything.
(Sadey Deposition at 78.)
Rebecca Sadey walked up and down the ramp twice but stated in her deposition that she did not observe any sort of bump, dip, or depression in the ramp. (Rebecca Sadey Deposition at 24.) Laura Lukehart also stated that, although she walked down the ramp, she didn't notice anything she had to step over or avoid. (Lukehart Deposition at 31.) After viewing the evidence most strongly in Sadey's favor, we conclude that reasonable minds could differ as to whether the concrete foundation was a open and obvious defect.
We also conclude that Sadey sufficiently identified the raised concrete foundation as the cause of her fall. A review of Sadey's deposition testimony reveals that, although she did not immediately know that the raised concrete area caused her fall, she stated that she "hit something raised and I tripped and skidded like on the side of it, I'm not sure. I tripped on this raised thing." (Sadey Deposition at 68.) She also added, "I tripped on something and since there was nothing else there, I'm sure it had to be there because that's where I was right next to." (Sadey Deposition at 69.) Sadey's daughter, Laura Lukehart, stated that she spotted the raised concrete area immediately after Sadey fell.
 When I went up to her I looked at her foot and she says, what did I trip on here, and she pointed to something sticking out of the ramp which I didn't notice before.
(Lukehart Deposition at 36.)
Also, Engineer James Madden testified that the concrete foundation was a trip hazard and that the ramp was seriously hazardous and defective at the time Sadey fell. He added that the area was obscure and would not be obvious to an infrequent user of the ramp. Ponderosa's manager, Kevin Haxton stated that he was aware of another incident in which a patron fell while walking on the ramp. (Haxton Deposition at 31-34.)
The testimony of outside witnesses and experts may be used to assist the plaintiff in identifying the reason for a fall. SeeJohnson v. Wendy's Internatl., Inc. (1993), 90 Ohio App.3d 100,104. We conclude that the above evidence, when construed most strongly in favor of Sadey as the non-movant, raises a triable issue as to whether the concrete foundation was the cause of Sadey's fall.
Because we conclude genuine issues of fact remained for trial, we reverse the trial court's grant of summary judgment and remand this case for further proceedings.
Judgment reversed and remanded.
This cause is reversed and remanded for further proceedings consistent with this opinion herein.
It is ordered that appellants recover of appellee their costs herein taxed.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH ROCCO P.J., CONCUR.
 MICHAEL J. CORRIGAN, J., DISSENTS (WITH ATTACHED DISSENTINGOPINION)
PATRICIA ANN BLACKMON, JUDGE
N.B. This entry is an announcement of the court's decision. See App.R. 22 (B), 22 (D) and 26 (A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22 (E) unless a motion for reconsideration with supporting brief, per App.R. 26 (A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22 (E). See, also, S.Ct.Prac.R. II, Section 2 (A) (1).