[Cite as *Hill v. Mullins*, 2017-Ohio-1302.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| ANNE HILL | : | |
| | : | |
| Plaintiff-Appellant | : | C.A. CASE NO. 27127 |
| | : | |
| v. | : | T.C. NO. 15CV861 |
| | : | |
| PATRICIA MULLINS, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendants-Appellees | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___7th___ day of _____April_____, 2017.

. . . . . . . . . .

ANITA WASHINGTON, Atty. Reg. No. 0089644, 119 E. Court Street, Suite 102, Cincinnati, Ohio 45202

and

STEPHEN D. BEHNKE, Atty. Reg. No. 0072805, 865 S. Dixie Drive, Vandalia, Ohio 45377

and

ROBERT L. GRESHAM, Atty. Reg. No. 0082151, 130 W. Second Street, Suite 1600, Dayton, Ohio 45402
        Attorneys for Plaintiff-Appellant

CHRISTOPHER W. CARRIGG, Atty. Reg. No. 0023947, Fifth Third Center, 1 S. Main Street, Suite 1800, Dayton, Ohio 45402
        Attorney for Defendants-Appellees

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Anne Hill appeals from a judgment of the Montgomery County Court of Common Pleas, which entered summary judgment in favor of Patricia Mullins and her husband on Hill's complaint for personal injuries.

{¶ 2} For the following reasons, the judgment of the trial court will be reversed, and the matter will be remanded for further proceedings.

## I. Facts and Procedural History

{¶ 3} The Mullinses bought a house in Miamisburg in January 2014, which they then "gutted" and renovated over a period of many months; they did not immediately move into the home. The Mullinses did much of the work on the house themselves or with the help of family and friends. One of the steps they had taken in January or February 2014 was to remove two walls and a doorway which had enclosed the stairs to the basement; a third wall, which ran alongside the opening to the stairs, was left in place. The Mullinses did not install a temporary railing, caution tape, or any other demarcation or barrier around the exposed opening in the floor; there was also no railing on the basement stairs.

{¶ 4} On September 18, 2014, Steve Walker, a contractor who installed tile, went to the Mullinses' home to provide an estimate for installing tile in a bathroom on the main floor of the house. Hill, who was Walker's girlfriend and his assistant with tile work, accompanied him. When they arrived at the house, Walker and Hill were told that Patricia Mullins was next door at a garage sale. It was the first time Walker or Hill had been to the home. After locating Mullins at the garage sale, Walker proceeded to look at the bathroom with Mullins, while Hill talked with some of Mullins's relatives at the

garage sale. According to Hill, she then waited for Walker and Mullins by Walker's van in front of the Mullinses' house.

{¶ 5} When Walker and Mullins emerged from the house, Walker worked on his estimate in the van while Mullins and Hill talked nearby. Mullins and Hill then headed inside to look at the bathroom; according to Hill, she also needed to assess what materials and tools would be needed for the job, and Mullins wanted to show her some of the poor workmanship performed by other contractors.

{¶ 6} Mullins and Hill, each of whom provided deposition testimony, disagree about what happened next, including whether Walker reentered the house with them. According to Hill, she followed Mullins through the front door and toward the back hall where the bathroom was located, but as she stepped around the wall near the corner of the open stairs, she fell into the unguarded hole above the stairs to the basement. Hill testified that she had not been looking at the floor because Mullins was talking and pointing out various things in the home, but Hill also stated that, due to the wall and Mullins's presence immediately in front on her, she would not have seen the hole in the floor even if she had been looking. According to Mullins, the women were not talking as they walked through the house, and they had already walked past the hole and looked at the bathroom when, as they headed back toward the front door, Hill stepped into the opening in the floor.

{¶ 7} As she fell, Hill hit the steps and then the basement floor. She suffered serious injuries, including broken ribs and a punctured lung.

{¶ 8} On February 13, 2015, Hill filed a complaint for personal injuries against the Mullinses. Depositions of Hill and Mullins were conducted and, on March 21, 2016,

the Mullinses filed a motion for summary judgment. The motion relied on Hill's deposition and an affidavit by Mullins, which included pictures of how the opening in the floor had looked on the day of the accident. Hill filed a response to the motion for summary judgment, to which she attached her own affidavit; she also relied on the parties' depositions and an affidavit and report from Larry Dehus, a forensic scientist, who concluded that the opening in the floor had created a "significant danger to anyone entering this house who would be unfamiliar with the location of the opening."

{¶ 9} On May 9, 2016, the trial court granted the motion for summary judgment, concluding that the opening in the floor was "open and obvious," that there were no attendant circumstances which created a genuine issue of fact as to whether the hole was open and obvious, and therefore that the Mullinses were not liable to Hill for her fall.

{¶ 10} Hill raises one assignment of error on appeal, which challenges the trial court's conclusions that the open and obvious doctrine applied and that there were no attendant circumstances which created a genuine issue of material fact.

## II.    Summary Judgment Standard

{¶ 11} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, after construing the evidence most strongly in favor of the nonmoving party, can only conclude adversely to that party. *Zivich v. Mentor Soccer Club, Inc.,* 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998). The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated. *Mitseff v. Wheeler,* 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). Once the moving party satisfies its burden, the burden shifts to the nonmoving

party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Dresher v. Burt,* 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996); Civ.R. 56(E). Throughout, the evidence must be construed in favor of the nonmoving party. *Id.*

{¶ 12} We review the trial court's ruling on a motion for summary judgment de novo. *Schroeder v. Henness,* 2d Dist. Miami No. 2012 CA 18, 2013-Ohio-2767, ¶ 42. De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence, without deference to the trial court, to determine whether, as a matter of law, no genuine issues exist for trial. *Ward v. Bond,* 2d Dist. Champaign No. 2015-CA-2, 2015-Ohio-4297, ¶ 8.

### III. The "Open and Obvious" Doctrine

{¶ 13} In order to prevail on a negligence claim, "one seeking recovery must show the existence of a duty, the breach of the duty, and injury resulting proximately therefrom." *Strother v. Hutchinson,* 67 Ohio St.2d 282, 285, 423 N.E.2d 467 (1981); *Long v. Speedway, L.L.C.*, 2d Dist. Montgomery No. 26851, 2016-Ohio-3358, ¶ 7. The status of a person who enters the land of another defines the scope of the legal duty owed to that person. *Gladon v. Greater Cleveland Reg. Transit Auth.,* 75 Ohio St.3d 312, 315, 662 N.E.2d 287 (1996).

{¶ 14} A business invitee "is one who enters another's land by invitation for a purpose that is beneficial to the owner." *Id.* With respect to business invitees, an owner's duty is to keep the premises in reasonably safe condition and warn of dangers that are known to the owner. *James v. Cincinnati,* 1st Dist. Hamilton No. C-070367, 2008-Ohio-2708, ¶ 24, citing *Eicher v. U.S. Steel Corp.*, 32 Ohio St.3d 248, 512 N.E.2d 1165

(1987). Liability only attaches when an owner has "superior knowledge of the particular danger which caused the injury," as an "invitee may not reasonably be expected to protect himself from a risk he cannot fully appreciate." *Uhl v. Thomas,* 12th Dist. Butler No. CA2008-06-131, 2009-Ohio-196, ¶ 13, citing *LaCourse v. Fleitz*, 28 Ohio St.3d 209, 210, 503 N.E.2d 159 (1986). Hill was clearly a business invitee.

{¶ 15} However, "if a danger is open and obvious, a property owner owes no duty of care to individuals lawfully on the premises." *Armstrong v. Best Buy Co., Inc.,* 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 14. To be open and obvious, a hazard must not be concealed and must be discoverable by ordinary inspection. *Larrick v. J.B.T., Ltd.,* 2d Dist. Montgomery No. 21692, 2007-Ohio-1509, ¶ 11, citing *Parsons v. Lawson Co.*, 57 Ohio App.3d 49, 50-51, 566 N.E.2d 698 (5th Dist.1989). The relevant issue is not whether an individual observes the condition, but whether the condition is capable of being observed. *Id.*, citing *Lydic v. Lowe's Cos., Inc.,* 10th Dist. Franklin No. 01AP-1432, 2002-Ohio-5001, ¶ 10.

{¶ 16} "Attendant circumstances" may affect the applicability of the open and obvious doctrine. Attendant circumstances have not been and probably cannot be precisely defined, but the term has been held to include any distraction that would come to the attention of a person in the same circumstances and reduce the degree of care an ordinary person would exercise at the time. *Speedway,* 2d Dist. Montgomery No. 26851, 2016-Ohio-3358, at ¶ 10. "Both circumstances contributing to and those reducing the risk of the defect must be considered. The totality of the circumstances of each case must be examined to determine if, as a whole, they create a substantial defect." *Stockhauser v. Archdiocese of Cincinnati,* 97 Ohio App.3d 29, 33, 646 N.E.2d 198 (2d

Dist.1994), citing *France v. Parliament Park Townhomes,* 2d Dist. Montgomery No. 14264, 1994 WL 151658 (Apr. 27, 1994).

**{¶ 17}** For attendant circumstances to negate the application of the open and obvious doctrine, they must not only be present, but must create "a greater than normal, and hence substantial, risk of injury." *Id.,* citing *Turner v. Burndale Gardens Co.,* 2d Dist. Montgomery No. 12807, 1991 WL 270662 (Dec. 18, 1991). The attendant circumstances must, taken together, divert the attention of the person, significantly enhance the danger of the defect, and contribute to the injury. *Id.* But attendant circumstances do not include regularly encountered, ordinary, or common circumstances. *Meyer v. Dayton*, 2d Dist. Montgomery No. 27002, 2016-Ohio-8080, ¶ 19, citing *Colville v. Meijer Stores Ltd. Partnership,* 2d Dist. Miami No. 2011-CA-011, 2012-Ohio-2413, ¶ 30. Also, "[a]ttendant circumstances do not include the individual's activity at the time of the fall unless the individual's attention was diverted by an unusual circumstance of the property owner's making." *Id.*, citing *McConnell v. Margello,* 10th Dist. Franklin No. 06AP-1235, 2007-Ohio-4860, ¶ 17.

### IV. Application of the Open and Obvious Doctrine

**{¶ 18}** The trial court found that the hole into which Hill fell was open and obvious because 1) of its size ("four feet long by three feet wide"); 2) of its prominence within the room and the floor; 3) it was not covered or concealed; and 4) it was obvious that work was being done on the premises. The court found: "The testimony, as well as the photographic evidence of the hole, demonstrates to the Court that the hole was an open and obvious hazard that [Hill] would have observed if she had looked. * * * [T]he fact that [Hill] failed to observe the hole because she didn't look down does not create a duty

on the part of [the Mullinses]." The court's judgment did not specifically mention the position of any wall(s) near the hole and did not address if or how any wall could have affected Hill's ability to observe the hole, although the presence of a wall or walls blocking her view was central to Hill's claim that the open and obvious doctrine did not apply.

{¶ 19} As a preliminary matter, we address the absence of certain exhibits from the record before us. During Hill's deposition testimony, she referred to two pictures: Exhibit B, "looking from the back of the dining room towards the front door area," and Exhibit C, looking "from the kitchen * * * back towards where the hallway goes to the bathroom." Defendant's Exhibit C is not contained in the record before us. In Mullins's deposition, she refers to a photographic Defendant's Exhibit A, which depicted the front door of her home; this exhibit also is not part of the record before us.

{¶ 20} There is only one photograph in the record of the main floor of Mullins's house, which purports to represent how the opening in the floor looked on the day of Hill's fall. We will refer to this photograph as "Exhibit B."[1] There are color and black-and-white versions of this photo attached to various documents in the record, with various markings made by Hill and Mullins, but the photographs depict the same image. A second photograph, taken looking straight down into the hole toward the basement, is attached to Patricia Mullins's affidavit, but it gives little, if any, perspective on how the hole would have been viewed as one approached it on the main floor; thus, this photo is unhelpful in assessing the open and obvious nature of the hole. Similarly, Dehus's report

---

[1] The trial court's judgment references "photographs" depicting "the hole" through which Hill fell, but it does not otherwise specify the exhibit numbers or perspectives of the pictures to which it refers, and none of its comments refers to Exhibits A or C. Thus, we presume Exhibits A and C were not presented in the trial court.

contained a picture looking directly into the hole, as well as a side-view photo of the basement stairs taken from the basement. Only Exhibit B sheds any light on whether the hole was open and obvious.

**{¶ 21}** According to Hill's deposition testimony, she followed Mullins through the front door of Mullins's house, walked "around the corner" shown on Exhibit B, whereupon her right foot stepped into the void created by the unguarded opening of a stairwell. She testified that she never saw the hole before falling into it. According to Hill, her fall occurred very shortly after entering the house. Hill had intended to proceed to the bathroom in the back of the house, but "while walking that direct path, [she] stepped into the opening in the floor." Hill testified that she "turned around the corner at the large wall next to the opening in the floor."

**{¶ 22}** Hill also testified that she had been following behind Mullins, who was taller and wider than Hill, that the women had been talking, and that Mullins had been pointing out to Hill various aspects of the remodeling project as they walked, such that Hill was not looking at the ground. Hill further testified that, in any event, she could not have seen the hole around the corner or around Mullins.

**{¶ 23}** In her affidavit in response to Mullins's motion for summary judgment, Hill also referenced Exhibit B, which was attached. The exhibit included Hill's marking of the location of the front door (which is not actually visible in the picture) and of the direction by which she approached the opening in the floor. According to the picture and Hill's markings, 1) the opening abutted and was parallel (length-wise) to a wall; 2) Hill approached the opening in the floor from the opposite side of the wall.

**{¶ 24}** In addition to the wall next to which the opening in the floor was situated,

Exhibit B depicts a wall to which Mullins refers in her deposition as a "short wall"; the parties agree that this wall was present at the time of the accident. The "short wall" extended from floor to ceiling, but was fairly narrow; it might also be described as a wide post. This wall stood between the front door and the opening in the floor through which Hill fell. Other than testifying that the wall/post was present at the time of the accident, neither of the parties references it in the depositions, i.e., they do not discuss how the presence of this wall/post might have affected Hill's ability to see the opening in the floor if she approached it from the front door.

**{¶ 25}** Hill also introduced a report from Larry M. Dehus, a forensic scientist who had inspected the Mullinses' house, including the opening in the floor. Dehus stated that the opening was 45 inches by 34 inches and was "positioned immediately adjacent to a wall that provides a walkway back towards the bathroom and bedrooms in the rear of the house." Dehus's report also stated various conclusions about whether the proper permits had been pulled for the remodeling project, whether OSHA regulations had been violated (without concluding whether such regulations were applicable), and about the presence of other Ohio building code violations related to the steepness and dimensions of Mullins's basement steps.

**{¶ 26}** Patricia Mullins provided a very different version of events than Hill. The differences included the direction from which Mullins and Hill had approached the hole, whether they had been talking, whether they had previously walked past the opening in the floor without incident, and whether Hill's employer had been walking with them at the time of Hill's fall. However, we recognize that these factual discrepancies are not necessarily relevant to the initial determination at the summary judgment stage of whether

the opening in the floor was "open and obvious" as a matter of law.

{¶ 27} The trial court found that the opening in the floor was open and obvious because it was "observable," even if Hill did not actually observe it. The court noted that the "hole is very prominent" in the photographs, and that it did "not blend in with anything else on the floor or in the room." It cited Hill's deposition testimony that she "didn't look down" because she had been "looking up" at what Mullins was pointing out to her. The trial court also found that there were no attendant circumstances, because Hill's testimony that she and Mullins had been talking and looking at things as they walked was not "anything unusual or out of the ordinary," and because Hill had denied that darkness prevented her from seeing the hole. Thus, the trial court found no genuine issue of material fact as to whether the opening in the floor had been open and obvious.

{¶ 28} The case presents a fact-intensive question as to whether the opening in the floor was open and obvious; the answer depends, at least in part, on the direction from which Hill approached the hole, which, in turn, affects whether the hole could have been observed by her. The parties presented conflicting testimony about the direction from which Hill approached the hole. If, as Hill claims, she approached from the front door and from the side by which her view of the hole would have been wholly or partially obscured by wall(s) virtually until she stepped into it, summary judgment was not warranted based upon a finding that the hole was open and obvious.

{¶ 29} We take no issue with the trial court's conclusions that the hole was large, "prominent," and "observable" when viewed from the back of the house, per Exhibit B. Because this is the only picture in the record, we presume it is the picture from which the court drew its conclusions about the prominence and observability of the hole. (We

cannot speculate why the parties did not submit any pictures taken in the direction from which Hill claimed to have approached the hole or perhaps a drawing depicting her path of travel). However, the trial court's analysis did not take into account that, if Hill's testimony were believed (which it must be for summary judgment), she approached the opening from a direction in which the hole might have been obscured by the wall alongside it and/or by another "short wall" positioned between the front door and the hole.

{¶ 30} The trial court also concluded that neither Mullin's presence walking in front of Hill nor Hill's assertion that Mullins was pointing things out to her as they walked created attendant circumstances that excused Hill's observation of the hole. As discussed above, attendant circumstances do not include regularly encountered, ordinary, or common circumstances; walking behind someone while that person is conversing and/or gesturing is not an unusual circumstance. Hill acknowledged that she was not looking at the floor as the women walked, but she also testified that she fell into the hole as she walked "around the corner" and that, "I didn't get one foot and went around and I was gone." Dehus concluded in his report that the hole was "positioned immediately adjacent to" the wall around which Hill claimed to have approached the hole. Thus, while the court may have reasonably concluded that the presence of someone walking in front of Hill and talking to her did not create an attendant circumstance, other circumstances presented a genuine issue of material fact as to whether the hole was open and obvious from Hill's vantage point.

{¶ 31} The assignment of error is sustained.

{¶ 32} The judgment of the trial court will be reversed, and this matter will be remanded for further proceedings.

. . . . . . . . . . . .

DONOVAN, J., concurs.

HALL, P.J., dissenting:

{¶ 33} Because I conclude that the 3' x 4' basement stairwell the plaintiff-appellant stepped into is objectively open and obvious I would affirm the trial court's entry of summary judgment for the defendants.

{¶ 34} From the depositions, affidavits, and exhibits[2] one readily must conclude, as indicated in the first Dehus picture, that the corner around which plaintiff drew an arrow on Hill-A is a right-angle corner of intersecting walls. Even if plaintiff was approaching the stairwell hugging the right-angle intersecting wall, simple geometry dictates that at least one-half of the width of the opening edge of stairwell would be apparent four or five feet away from the opening. In other words, plaintiff did not make a button-hook turn around the end of a free-standing wall to land in the stairwell. Plaintiff, by her own account, and her arrow, was not hugging the wall. She was out near the center of what is variously described as a hallway. From that angle, approximately three-fourths of the opening end of the stairwell would have been readily observable for six to eight feet, meaning plaintiff took three or four steps, after the stairwell was open and obvious, before she stepped into the opening.

{¶ 35} In addition, the fact that plaintiff fell into the stairwell does not support an

---

[2] To view the pictures of the basement stairwell, proceed to the Montgomery County Clerk of Courts website at http://www.clerk.co.montgomery.oh.us/pro/. Enter the case number "15CV 861," enter the characters which appear immediately above the search button, click on the search button, then click on the blue displayed case number, then click on the "docket" button. Scroll to the docket filing of 04/21/2016 and click on the red PDF button. Plaintiff's response to the summary judgment motion is displayed including affidavits and several pictures.

inference that the opening was hidden or obscured. In its decision, the trial court stated:

Upon review, the Court notes that, during her deposition, Plaintiff provided the following testimony:

**Defendants' Counsel**: So when you walked in, I'm sure it was immediately apparent to you that there were renovations going on throughout the house?

**Plaintiff**: There was work going on.

**Defendants' Counsel**: Did you walk back to the bathroom?

**Plaintiff**: When we proceeding [*sic*] into the house, we were – I went around and I was following her back to the bathroom and we looked around at some of the things that she did and she was taking me to the bathroom and, you know, she was in front of me.

**Defendants' Counsel**: Okay.

**Plaintiff**: And she walked in front of me and before I knew it, I was gone.

*Deposition of Anne Hill* at p. 49: 4-17.

**Defendants' Counsel**: When she walked around, she was no longer in between you and the hole, correct?

**Plaintiff**: Correct.

**Defendants' Counsel**: Okay. So she was no longer blocking your view of the hole, correct?

**Plaintiff**: No, I can't say that.

**Defendants' Counsel**: But if she's around – on the side of the hole towards the bottom of the photograph and you are still – you have not yet reached the hole, she's not blocking your view of the hole, true?

**Plaintiff**: We're not even paying attention to the hole. We are talking and walking. She's walking and before I knew it I'm gone.

**Defendants' Counsel**: Okay. And the reason why you fell in the hole is because you weren't looking down and you weren't paying attention, correct?

**Plaintiff**: I was paying attention.

**Defendants' Counsel**: You said you weren't paying attention.

**Plaintiff**: I was paying attention to everything we were doing and we were talking.

**Defendants' Counsel**: You did not see the hole because you did not look down, correct?

**Plaintiff**: Why would I be looking down?

**Defendants' Counsel**: Answer my question. You did not see the hole because you did not look down as you were walking, correct?

**Plaintiff**: No, I didn't look down. I was looking up at everything else.

*Id.* at p. 67: 5-25; p. 68: 1-9.

**Defendants' Counsel**: And had you looked down, you would have been able to see the hole, but you never looked down and that's why you didn't see it?

**Plaintiff**: Right, I didn't look down.

*Id.* at p. 69: 15-18.

(Decision, Order, and Entry Sustaining Defendant's Motion for Summary Judgment at 5-6). Accordingly, plaintiff could not have determined whether the stairwell was open and

obvious.

**{¶ 36}** Because I believe there is no genuine issue of material fact that the stairwell was open and obvious, I would affirm the judgment of the trial court and, therefore, dissent.

. . . . . . . . . .

Copies mailed to:

Anita Washington
Stephen D. Behnke
Robert L. Gresham
Christopher W. Carrigg
Hon. Dennis J. Adkins