[Cite as *McCoy v. Wasabi House, L.L.C.*, 2018-Ohio-182.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| SHERRYL MCCOY | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellant | : | Hon. Earle E. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2017CA00098 |
| WASABI HOUSE, LLC, ET AL | : |  |
|  | : |  |
| Defendants-Appellees | : | O P I N I ON |

CHARACTER OF PROCEEDING: Civil appeal from the Stark County Court of Common Pleas, Case No. 2016CV02081

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: January 16, 2018

APPEARANCES:

For Plaintiff-Appellant

WILLIAM J. DAVIS
ARONSON, FINEMAN & DAVIS CO.
124 EAST FIFTH STREET
EAST LIVERPOOL, OH 43920

For Defendant-Appellee

CRAIG G. PELINI
NICOLE H. RICHARD
PELINI, CAMPBELL & WILLIAMS, LLC
8040 CLEVELAND AVE. NW, STE. 400
NORTH CANTON, OH 44720

*Gwin, P.J.*

{¶1}   Appellant appeals the May 17, 2017 judgment entry of the Stark County Court of Common Pleas granting appellee's motion for summary judgment.

*Facts & Procedural History*

{¶2}   On September 20, 2016, appellant Sherryl McCoy filed a negligence complaint against appellee Wasabi House, LLC.  Appellant alleged in her complaint that on October 17, 2014, at 5:45 p.m., while she was holding onto the handrail and walking on the ramp leading to the entrance doors, she tripped on an uneven area on the ramp covered by a rubber mat and sustained injuries.  Appellee filed an answer on October 21, 2016.  Appellee then filed a motion for summary judgment on April 11, 2017.  Appellee alleged two doctrines barred appellant's negligence complaint:  the open and obvious doctrine and the two-inch rule.  Appellant filed a brief in opposition to appellee's motion for summary judgment and argued the two-inch rule did not apply and contended whether the condition was open and obvious was a jury question.

{¶3}   In her deposition, appellant stated that, as a result of her fall on October 17, 2014, she sustained a right leg puncture wound and her right femur was shattered such that the doctor had to put in a rod, plate, and screws.  Appellant lives in Pennsylvania and came to Canton earlier that day to celebrate an occasion with her family.  Appellant had never been to Wasabi House before.  When she arrived at Wasabi House, appellant parked in the lot to the left-hand side of the building as the restaurant faces the street. Appellant stated when she arrived at Wasabi on October 17, 2014, it was 5:45 p.m., it was still light out, there was no precipitation, she had no visibility problems, and the light was such that she could see where she was walking.  Appellant testified her niece and

nephew were ahead of her with their children. Appellant does not have any visual or vision issues.

{¶4} Appellant stated that as she began to go up the ramp, she could see it was a ramp, could see the condition of the ramp as she was walking, could see the ramp was going up to the landing, could see a black mat on the ramp, and knew the handrail ended at the top of the ramp. She was walking up the right-hand side of the ramp with her hand on the handrail. Appellant testified, "she saw nothing to make [her] think there was any reason I shouldn't step up." Appellant knew she was walking up a ramp, could see the condition of the ramp, and was able to look down and see where she was putting her foot. She stated as she was walking upward, it was obvious it was a ramp and obvious there was a runner on the ramp. Appellant identified Exhibit A as a picture of the ramp she was walking up and stated she could see the ramp, black runner, and black mat on the day in question. Appellant testified she made the conscious decision to use the ramp.

{¶5} Appellant stated as she was walking up the ramp, she could see the wood and rubber mat. Appellant testified the lead foot was her right foot, which went up onto the tile itself. Appellant believes her left toe hit something, causing her to fall, but when asked where her left toe hit, appellant stated, "I'm going to say I'm not positive." Appellant stated she was able to see the tile as she was placing her right foot on the tile and, as she was beginning to move her left foot forward, she was able to see the area directly in front of her. She knew she was going from the ramp to the tile. Appellant testified there was nothing except people ahead of her walking up the ramp, and the area where she fell was capable of observation within her field of vision.

{¶6} Appellant confirmed she had just walked over the same area with her right foot safely. When asked what was different about moving her left foot that was different from her right foot, appellant responded, "I don't know." Appellant testified that, at the time her fall occurred, her nephew holding an infant safely walked across the area, as did her niece and her sister. Appellant stated that one of the ambulance drivers told her this happened before at Wasabi, but appellant had no personal knowledge of any previous falls.

{¶7} Appellant stated her nephew returned to Wasabi after the accident and took photographs. As to the photographs taken by her nephew, appellant testified she believes the photographs taken by her nephew helped tell her what caused her to fall.

{¶8} On direct examination, appellant testified she could see there was a ramp in front of her, could see the runner from the bottom to the top, could see the black mat at the top, and none of these things looked hazardous to her. Appellant stated she could not see what was under the black mat and that she was not there when they peeled back the black mat. Appellant testified there was "nothing to distract her" as she was walking towards the door, and that she looked at the floor and entrance as she was going up the ramp.

{¶9} Appellant also attached her own affidavit to her response to the motion for summary judgment. In her affidavit, appellant averred there was nothing visible on the black mat that covered the end of the ramp and porch to cause her to trip and fall. She stated she had viewed the tiled porch and there appeared no obstructions before her. Appellant averred as she stepped off the end of the ramp and onto the porch with her right foot, the toe of her left foot caught, and she stumbled toward the entrance door seven

feet away.  When her left foot caught, it tripped her, and she could not recover.  Appellant stated upon taking the step off the ramp and onto the porch, she was looking forward and following her family.  Appellant averred there was no visible hazard on the black rubber mat as she walked on it and no abrupt difference in the level between the porch and the end of the ramp was visible to catch the toe of her left foot.  Further, that she had no reason to look down at her left foot after her right foot reached the porch because the porch looked free and clear of anything that would impede her step.

{¶10}  Appellant averred that as she reached the top of the ramp and let go of the handrail, she was paying attention to her niece a step ahead of her, her sister Evelyn who was carrying a child, her nephew who was carrying a child, and to others entering the porch from the front stairs.  She stated her attention was drawn to her family and other persons on the porch and the activity entering the restaurant through the door.

{¶11}  Also attached to appellant's response to the motion for summary judgment is the affidavit of Dustin Willgohs ("Willgohs"), appellant's nephew.  Willgohs averred that on the day in question, appellant was a step behind his wife as they all walked up the ramp and, as she was walking on the mat-covered end of the ramp where it adjoined the porch or landing, she stumbled forward towards the entrance door, falling on the tiled porch.  Willgohs stated he returned to the restaurant on October 17, 2014 to see what caused appellant to fall and the ramp, runner on the ramp, and mat on the top of the ramp looked fine.  However, he noticed some "give" to the mat upon downward pressure in the area of the ramp adjoining the porch.  Willgohs took four photographs on October 17, 2014 of the area in question and went back on October 24, 2017 to take five additional photographs.  The photographs are attached to his affidavit.

{¶12} Appellant also submitted the affidavit of Kurtis Whitling ("Whitling"), a mechanical engineer at CED Technologies. Whitling stated he inspected the ramp at issue on December 30. He averred that, with the mat removed, the vertical height difference at the transition from the wooden ramp to the tile floor ranged from 1 1/8 inch at the west end, to 1 ¼ inch in the center, to 7/8 inch at the east end of the ramp. Whitling opined the sharp vertical offset provided a tripping hazard which would be a dangerous condition for patrons and that the hazard was hidden by the black material and black rubber mat. Whitling also opined that the idea that a two-inch offset is insubstantial conflicts with all standards of construction. He concluded the vertical height difference between the tile and base of the ramp where appellant's left toe caught was between 1 1/8 inch and 1 ¼ inch and caused her to stumble. Whitling also opined as to how the hazard should have been fixed by properly replacing the mortar built up on the west side of the ramp.

{¶13} Appellant filed the deposition of Nan Lin ("Lin"). Lin testified that when the restaurant opened in 2009, the ramp is "pretty much" how it is now, and they have not changed the dimension or structure of the ramp at all. The ramp was there when Lin purchased the property. The tiles, handrails, and slope of the ramp have not changed since he purchased the restaurant in 2009. Lin did put in lights in the area to improve visibility and also put in a non-slip runner on the ramp.

{¶14} The trial court issued a judgment entry on May 17, 2017. The trial court found that a black rubber mat ran over the top edge of the ramp and onto the tiled platform and, under the mat, the wooden ramp was slightly lower than the platform, and a small lip existed where the ramp transitioned to the platform. Further, that photographs taken

shortly after the incident show a small hump visible beneath the rubber mat where it lay across the transition from the ramp to the platform. The trial court noted the height of the "lip was reduced by the rubber mat lying across it," and, according to appellant's expert report, the height of the lip was approximately one inch. The trial court noted the following testimony of appellant: appellant admits she observed the black runner and could clearly see the area where the mat transitioned onto the tiled platform; appellant admits she was able to negotiate the transition with her right foot without any problem, but when she stepped with her left foot, her toe caught, she stumbled and fell; appellant admits the area where she was walking was observable and nothing obstructed her ability to view the ramp and tile platform; and while she stated in her affidavit she was paying attention to family and patrons ahead of her on the ramp, she testified in her deposition that she was not distracted by anything as she walked up the ramp.

{¶15} The trial court found, based upon the testimony of appellant and the photographs submitted showing a slight lip at the transition from the end of the ramp to the tiled platform, the defect was open and obvious. The trial court stated the exposed lip at the edge of the black runner and slight hump in the mat is clearly shown in appellant's own photographs. Further, that the rubber mat served to smooth over the transition from the ramp to the platform without actually concealing the transition. The trial court noted appellant's admissions that she could see the ramp, knew the ramp was going up to the landing, and knew the black rubber mat lay across the transition. The trial court found appellant's testimony that she "saw nothing to make me think there was any reason why I shouldn't step up" important, as it meant appellant understood she had to step *up* onto the landing. The trial court found reasonable people viewing the

photographs can only conclude the slight difference in height between the end of the ramp and tiled platform was open and obvious.

{¶16} Further, that appellant failed to produce any evidence of attendant circumstances. While she stated in her affidavit her "anticipation and attention" was drawn to her family and the activity entering through the restaurant, the trial court found these are not circumstances beyond her control. Rather, appellant was simply describing her own activities at the time of the fall. The trial court also relied on appellant's testimony that she was not distracted by anything when she fell.

{¶17} The trial court also found the trivial defect or two-inch rule applies to bar appellant's claim. The trial court stated appellant's evidence establishes the greatest differential between the ramp and the platform was 1 ¼ inch and these measurements were taken without the black runner or map over the lip. Further, appellant's expert report and photographs demonstrate that, with the mat present, the offset is approximately one inch.

{¶18} The trial court found there is no evidence of attendant circumstances to rebut the two-inch rule, as the weather was dry, it was light out, appellant stated she had no visibility problems, appellant testified there was nothing obstructing her view of the ramp or the threshold, appellant stated she was not distracted, appellant was able to negotiate the lip with her right foot without any difficulty an instant earlier, and appellant was not able to state with certainty what her left toe caught on. As to appellant's argument that the rubber mat itself was an attendant circumstance because it hid the offset, the trial court found appellant's photographs show the lip at the transition from the ramp to the tiled platform is clearly visible as one approached the top of the ramp. Further, appellant's

self-serving affidavit that the difference in the level between the ramp and porch was not visible is contradicted by her own testimony and own photographs.

{¶19}   The trial court found Wasabi House was entitled to judgment as a matter of law and granted Wasabi House's motion for summary judgment.

{¶20}   Appellant appeals the May 17, 2017 judgment entry of the Stark County Court of Common Pleas and assigns the following as error:

{¶21}   "I. THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT BY FINDING THAT THE APPELLANT WAS INJURED BY AN OPEN AND OBVIOUS HAZARD, WHERE THE TRIP HAZARD WAS HIDDEN FROM VIEW BY A FLEXIBLE BLACK RUBBER MAT THAT DEPRESSED AS THE APPELLANT WALKED OVER IT.

{¶22}   "II. THE COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT BASED UPON THE "TWO INCH RULE" WHERE THE TRIP HAZARD WAS HIDDEN FROM VIEW AND NOT SUBJECT TO OBSERVATION BECAUSE THE HAZARD WAS COVERED WITH A FLEXIBLE BLACK RUBBER MAT THAT DEPRESSED AS THE APPELLANT WALKED OVER IT.

{¶23}   "III. THE COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT WHERE THE APPELLANT'S DIRECT, CIRCUMSTANTIAL AND EXPERT TESTIMONY ESTABLISHED THAT THE TRIP POINT THAT CAUGHT THE TOE OF THE APPELLANT'S LEFT FOOT AND CAUSED HER TO STUMBLE AND FALL WHICH WAS NOT VISIBLE OR OBSERVABLE BUT WAS PRODUCED BY THE PRESSURE OF THE APPELLANT'S LEFT FOOT DEPRESSING THE BLACK RUBBER MAT THAT RESTED ON THE TILE PORCH AND THE END OF THE HANDICAP RAMP.

{¶24} "IV. THE COURT ERRED IN GRANTING SUMMARY JUDGMENT WHERE ALL DIRECT, CIRCUMSTANTIAL AND EXPERT TESTIMONY OFFERED BY APPELLANT WAS THAT THE DISTANCE IN ELEVATION BETWEEN THE EDGE OF THE TILE PORCH AND THE END OF THE WOODEN HANDICAP RAMP CREATED A SUBSTANTIAL HAZARD BECAUSE THE VERTICAL DISTANCE WAS NOT OBSERVABLE UNDERNEATH THE BLACK RUBBER MAT THE COVERED IT.

{¶25} "V. THE COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT WHERE THE APPELLANT HAS OFFERED DIRECT, CIRCUMSTANTIAL AND EXPERT TESTIMONY THAT ESTABLISHED THAT THE DEFECT AND HAZARD WHICH PROXIMATELY CAUSED THE APPELLANT TO STUMBLE AND FALL WAS HIDDEN FROM OBSERVATION AND VIEW BENEATH A FLEXIBLE BLACK RUBBER MAT.

{¶26} "VI. THE COURT ERRED IN HOLDING THAT "THE APPELLANT'S STATEMENT THAT THE DIFFERENCE IN LEVEL BETWEEN THE END OF THE WOODEN RAMP AND THE TILED PORCH WAS NOT VISIBLE IS FLATLY CONTRADICTED BY HER OWN PHOTOGRAPHS" BECAUSE PHOTOS OF THE RUBBER MAT IN PLACE DO NOT SHOW WHAT WAS UNDER THE MAT AND WHETHER OR NOT CONCRETE OR OTHER RAMPING MATERIAL WAS ON THE WOODEN END OF THE RAMP UNDER THE MAT, THAT WOULD HAVE ELIMINATED THE VERTICAL TRIP HAZARD, SIMILAR TO THE CONCRETE SHOWN TO THE RIGHT OF THE BLACK RUBBER MAT IN THE APPELLANT'S PHOTOGRAPH EVIDENCE."

{¶27} While appellant lists six assignments of error, we find these assignments of error deal with two issues: the open and obvious nature of the alleged defect and the two-inch rule. Accordingly, we will review several of these assignments of error together.

*Summary Judgment Standard*

{¶28} Civil Rule 56(C) in reviewing a motion for summary judgment which provides, in pertinent part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed mostly strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

{¶29} A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the

undisputed facts. *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.*, 15 Ohio St.3d 321, 474 N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 733 N.E.2d 1186 (6th Dist. 1999).

{¶30} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987). This means we review the matter de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 2000-Ohio-186, 738 N.E.2d 1243.

{¶31} The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the non-moving party's claim. *Drescher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996). Once the moving party meets its initial burden, the burden shifts to the non-moving party to set forth specific facts demonstrating a genuine issue of material fact does exist. *Id.* The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary materials showing a genuine dispute over material facts. *Henkle v. Henkle*, 75 Ohio App.3d 732, 600 N.E.2d 791 (12th Dist. 1991).

I., III., V.

{¶32} In her first, third, and fifth assignments of error, appellant contends the trial court erred in granting summary judgment based upon the open and obvious doctrine.

**{¶33}** The issue in this case is whether Wasabi House was negligent. In order to establish a claim for negligence, a plaintiff must show: (1) a duty on the part of defendant to protect the plaintiff from injury; (2) a breach of that duty; and (3) an injury proximately resulting from the breach. *Jeffers v. Olexo*, 43 Ohio St.3d 140, 539 N.E.2d 614 (1989).

**{¶34}** There is no dispute between the parties that on October 17, 2014, appellant was a business invitee. An invitee is a person who rightfully enters and remains on the premises of another at the express or implied invitation of the owner and for a purpose beneficial to the owner. *Carpenter v. Mount Vernon Gateway, Ltd.*, 5th Dist. Knox No. 13CA6, 2014-Ohio-465. The owner or occupier of the premises owes the invitee a duty to exercise ordinary care to maintain its premises in a reasonably safe condition, such that its invitees will not unreasonably or unnecessarily be exposed to danger. *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 480 N.E.2d 474 (1985). A premises owner must warn its invitees of latent or concealed dangers if the owner knows or has reason to know of the hidden dangers. *Id.* However, a premises owner is not an insurer of its invitees' safety against all forms of accident that may happen. *Id.* Invitees are expected to take reasonable precautions to avoid dangers that are patent or obvious. *Sidle v. Humphrey*, 13 Ohio St.2d 45, 233 N.E.2d 589 (1968).

*Open & Obvious*

**{¶35}** Under Ohio law, a business owner owes no duty to protect an invitee from dangers that are known to the invitee or are so obvious and apparent to the invitee that he or she may be reasonably expected to discover them and protect him or her against them. *Sidle v. Humphrey*, 13 Ohio St.2d 45, 233 N.E.2d 589 (1968).

{¶36} In *Armstrong v. Best Buy Company, Inc.*, the Ohio Supreme Court found a premises owner owes no duty to persons entering the premises regarding dangers that are open and obvious. 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088. The rationale of the open and obvious doctrine is that the open and obvious nature of the hazard itself serves as a warning, so that owners reasonably may expect their invitees to discover the hazard and take appropriate measures to protect themselves against it. *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 597 N.E.2d 504 (1992). Therefore, when a danger is open and obvious, a premises owner owes no duty of care to individuals lawfully on the premises. *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088. When applicable, the open and obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claim. *Aycock v. Sandy Valley Church of God*, 5th Dist. Tuscarawas No. 2006AP090054, 2008-Ohio-105.

{¶37} The law uses an objective, not subjective, standard when determining whether a danger is open and obvious. *Freeman v. Value City Dept. Store*, 5th Dist. Stark No. 2010 CA 00034, 2010-Ohio-4634. The fact that a particular appellant himself or herself is not aware of the hazard is not dispositive of the issue. *Id.* It is the objective, reasonable person that must find the danger is not obvious or apparent. *Id.* The determinative issue is whether the condition is observable. *Aycock v. Sandy Valley Church of God*, 5th Dist. Tuscarawas No. 2006AP090054, 2008-Ohio-105.

{¶38} Appellant contends courts have ruled whether a condition is open and obvious is a jury question that is not decided as a matter of law and cites cases in support of her argument that the open and obvious doctrine is an extremely factual inquiry and should not be decided via summary judgment. However, this Court has ruled that, in most

situations, whether a danger is open and obvious presents a question of law. *Id.* Under certain circumstances, disputed facts may exist regarding the openness and obviousness of the danger. *Id.* However, where only one conclusion can be drawn from the established facts, the issue of whether a risk was open and obvious is decided by the court as a matter of law. *Id.* Further, the cases cited by appellant are distinguishable from the instant case, as in these cases there was conflicting testimony either as to whether the condition was obscured by a wall or conflicting evidence as to the visibility on the stairway at the time of the fall. *Hill v. Mullins*, 2nd Dist. Montgomery No. 27127, 2017-Ohio-1302; *Watson v. Bradley*, 11th Dist. Trumbull No. 2016-T-0031, 2017-Ohio-431.

{¶39} In this case, appellant testified she could see there was a ramp; could see the condition of the ramp as she was walking; could see the ramp was going up to the landing; could see the black mat on the ramp; could see the condition of the ramp; was able to look down and see where she was putting her foot; saw nothing to make her think there was any reason she shouldn't step up; it was obvious it was a ramp; and it was obvious there was a runner on the ramp. Appellant also testified the photographs taken by her nephew shortly after the incident show the condition of the area on the day of her fall. These photographs clearly show the lip at the transition from the end of the ramp to the tile platform and also fully show the slight hump in the black mat. Thus, the slight difference in height between the end of the ramp and the tiled platform was open and obvious, and the nature of the condition was observable.

{¶40} We find this case analogous to cases finding no genuine issue of material fact exists, particularly the case of *Bauermeister v. Real Pit BBQ, LLC*, 5th Dist. Delaware

No. 14 CAE 04 024, 2014-Ohio-4501, in which the plaintiff fell exiting a restaurant. This Court found the slope and riser deviation was open and recognizable, as observed in the photographs provided. *Id.* See also *Ryan v. Gaun*, 5th Dist. Licking No. 2003CA00110, 2004-Ohio-4032 (rejecting appellant's argument that the hazard presented by the steep slope was hidden and latent and finding the hazard presented by the slope was open and obvious, even though the exact degree of the slope was unknown and finding appellees' failure to provide notice of the exact slope degree of the ramp does not render the ramp a latent, hidden danger); *Freeman v. Value City Dept.* Store, 5th Dist. Stark No. 2010 CA 00034, 2010-Ohio-4634 (holding threshold was open and obvious because it was neither hidden from view nor concealed as the plaintiff testified nothing obstructed her view and she had a clear view of where she was going); *Snyder v. Kings Sleep Shop, LLC*, 6th Dist. Williams No. WM-13-006, 2014-Ohio-1003 (holding danger posed by ramp in doorway of store was open and obvious); *Jackson v. Board of Pike Commissioners*, 4th Dist. Pike No. 10CA805, 2010-Ohio-4875 (holding danger associated with sidewalk and handicap ramp was open and obvious because nothing about the danger is hidden or concealed from view).

{¶41} Appellant next argues summary judgment is inappropriate due to the statement in her affidavit that there was no visible hazard on the black rubber mat as she walked on it.

{¶42} However, as we stated in *Patterson v. Licking Twp.*, 5th Dist. Licking No. 17-CA-3, 2017-Ohio-1463, "a self-serving affidavit that is not corroborated by any evidence is insufficient to establish the existence of an issue of material fact," and "to conclude otherwise would enable the nonmoving party to avoid summary judgment in

every case." See also *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47 (holding "an affidavit of a party opposing summary judgment that contradicts former deposition testimony of that party may not, without sufficient explanation, create a genuine issue of material fact to defeat a motion for summary judgment"). In her deposition testimony, appellant stated she could see the condition of the ramp as she was walking, could see the black mat on the ramp, was able to look down and see where she was putting her foot, knew she had to step up, and that it was obvious there was a runner on the ramp. Further, the photographs submitted by appellant and taken by her nephew contradict appellant's testimony, as the open and obvious nature of the exposed lip at the right and left edges of the black runner and the hump visible from the black rubber mat is fully shown. As in *Patterson*, appellant has not corroborated her affidavit with any evidence or included in her affidavit any specific facts which establish the existence of any issue of material fact.

{¶43} Appellant finally contends the trial court erred in applying the open and obvious doctrine because Whitling opined as to how the hazard should have been fixed by properly replacing the mortar built up on the west side of the ramp. However, as this Court has previously stated, "the landowner's duty is not to be determined by questioning whether the condition could have been made perfect or foolproof. The issue is whether the conditions that did exist were so open and obvious to any person exercising reasonable care and watching where she was going." *Bauermeister v. Real Pit BBQ, LLC*, 5th Dist. Delaware No. 14 CAE 04 0024, 2014-Ohio-4501.

*Attendant Circumstances*

{¶44} An exception to the open and obvious doctrine is the existence of attendant circumstances. *Aycock v. Sandy Valley Church of God*, 5th Dist. Tuscarawas No. 2006AP090054, 2008-Ohio-105. These attendant circumstances may exist which distract an individual from exercising the degree of care an ordinary person would have exercised to avoid the danger, and may create a genuine issue of material fact as to whether a hazard is open and obvious. *Id.* For this exception to apply, an attendant circumstance must divert the attention of the injured party, significantly enhance the danger of the defect, and contribute to the injury. *Bovetsky v. Marc Glassman, Inc.* 5th Dist. Stark No. 2016CA00122, 2016-Ohio-7863.

{¶45} There is no precise definition of attendant circumstances. *Mulcahy v. Best Buy Stores, LP*, 5th Dist. Delaware No. 13 CAE 06 0051, 2014-Ohio-1163. Attendant circumstances are factors that contribute to a fall and are beyond the injured person's control. *Id.* The phrase refers to all circumstances surrounding the event, such as time and place, the environment or background of the event, and the conditions normally existing that would unreasonably increase the normal risk of a harmful result of the event. *Aycock v. Sandy Valley Church of God*, 5th Dist. Tuscarawas No. 2006AP090054, 2008-Ohio-105.

{¶46} Attendant circumstances do not include the individual's activity at the moment of the fall, unless the individual's attention was diverted by an unusual circumstance of the property owner's making. *Id.*, citing *McGuire v. Sears, Roebuck & Co.*, 118 Ohio App.3d 494, 693 N.E.2d 807 (1st Dist. 1996). Further, an individual's particular sensibilities do not play a role in determining whether attendant circumstances

make the individual unable to appreciate the open and obvious nature of the danger. *Freeman v. Value City Dept. Store,* 5th Dist. Stark No. 2010 CA 00034, 2010-Ohio-4634. Rather, the analysis of attendant circumstances uses an objective test. *Mulcahy v. Best Buy Stores, LP*, 5th Dist. Delaware No. 13 CAE 06 0051, 2014-Ohio-1163.

**{¶47}** Appellant alleges there are two attendant circumstances that create a genuine issue of material fact as to whether the hazard is open and obvious. Appellant first alleges her averment in her affidavit that "her attention was drawn to her family and other persons on the porch and the activity entering the restaurant through the door" was sufficient evidence of attendant circumstances to create a genuine issue of material fact.

**{¶48}** However, as this Court held in *Kraft v. Johnny Biggs Mansfield, LLC*, 5th Dist. Richland No. 2012 CA 0068, 2012-Ohio-5502, "normal traffic" of people coming in and out of a restaurant is not a circumstance so significant or unusual as to rise to the level of attendant circumstances. Further, in *Rayburn v. Delaware Co. Agricultural Society*, 5th Dist. Delaware No. 15 CAE 02 0016, 2015-Ohio-1903, we held there was no evidence to establish the numerous people in the area distracted plaintiff to the point of reducing the degree of care an ordinary person would exercise. See also *Gurcarkowski v. McPeek Funeral Home*, 5th Dist. Licking No. CA-3479, 1990 WL 15752 (finding no attendant circumstances on a standard pedestrian sidewalk); *Freeman v. Value City Dept. Store*, 5th Dist. Stark No. 2010 CA 00034, 2010-Ohio-4634 (finding no attendant circumstance when plaintiff testified nothing was distracting her at the time of the incident); *Jackson v. Board of Pike Commissioners*, 4th Dist. Pike No. 10CA805, 2010-Ohio-4875 (finding moving to the side to let someone pass on a handicap ramp is not an attendant circumstance); *Frano v. Red Robin Int'l, Inc.*, 181 Ohio App.3d 13, 2009-Ohio-

685, 907 N.E.2d 796 (11th Dist.) (finding no attendant circumstances when the record did not contain evidence the plaintiff was distracted by the atmosphere of the restaurant).

{¶49} In this case, appellant testified that, at the time of the incident, it was still light out, there was no precipitation, she had no visibility problems, she could see where she was walking, and nothing obstructed her view of the ramp or the threshold. Additionally, appellant specifically stated there was "nothing to distract her" as she was walking towards the door and she was capable of observing both the ramp and the threshold in her field of vision. Thus, there is no evidence her family or other people entering the restaurant distracted appellant to the point of reducing the degree of care an ordinary person would exercise.

{¶50} Appellant also argues the black mat was an attendant circumstance because she was distracted by the mat. However, appellant testified she saw the ramp, saw the black mat on the ramp, understood she needed to step up to the tiled foyer, and nothing distracted her as she was walking towards the door. When asked where her left toe hit, appellant stated, "I'm going to say I'm not positive." Further, when asked what was different about moving her left foot that was different from her right foot, appellant testified, "I don't know." Additionally, there is evidence that the mat actually lessened the vertical distance at the transition between the wooden ramp to the tiled floor. Thus, the existence of the black mat is not a circumstance that significantly enhanced the danger of the defect or hazard and contributed to the injury.

{¶51} We find that reasonable minds could only conclude the threshold was open and obvious. We further find no evidence of any attendant circumstances which enhanced the danger to appellant and contributed to her fall. We therefore find Wasabi

House owed no duty to appellant and the trial court did not err in granting summary judgment to Wasabi House. Appellant's first, third, and fifth assignments of error are overruled.

## II., IV, VI.

{¶52} In her second, fourth, and sixth assignments of error, appellant argues the trial court erred in finding the "two inch rule" or the "trivial defect" rule bars recovery in this case. Appellant contends the difference is substantial and the two-inch rule is not a bright-line test, but depends on the circumstances. Further, that the two-inch rule does not apply because the trip point beneath the mat could not be seen and the distance between appellant's right foot on the ramp and the step up to the foyer was greater than two inches. Appellant also contends there were attendant circumstances to render the defect substantial.

{¶53} The Ohio Supreme Court has declined to hold property owners and occupiers liable as a matter of law for injuries due to minor or trivial imperfections that were not unreasonably dangerous, are commonly encountered, and to be expected. In *Kimball v. Cincinnati*, 160 Ohio St. 370, 116 N.E.2d 708 (1953), the Ohio Supreme Court held that a height variation less than two inches is a slight defect as a matter of law that precludes a finding of negligence. In *Helms v. American Legion, Inc.*, 5 Ohio St.2d 60, 213 N.E.2d 734 (1966), the Ohio Supreme Court reaffirmed its holding in *Kimball* and extended the two-inch rule to privately owned or occupied properties.

{¶54} In *Cash v. Cincinnati*, 66 Ohio St.2d 319, 421 N.E.2d 1275 (1981), the Ohio Supreme Court again reviewed the two-inch rule. The Court clarified the two-inch rule and stated courts must also consider any attendant circumstances in determining whether

liability exists for trivial defects. Thus, in *Cash*, the Ohio Supreme Court established that a height difference of two inches or less is insubstantial as a matter of law, unless attendant circumstances are shown to elevate the defect to an unreasonably dangerous condition. *Id.*

{¶55} Appellant contends the two-inch rule is not applicable in this case because the hazard at issue is not a vertical distance of less than two inches. However, this argument is contradicted by her expert's testimony. Whitling stated that, with the mat removed, the vertical height difference at the transition from the wooden ramp to the tile floor varied from 7/8 inch to 1 ¼ inch at the highest point. Further, with the mat on the ramp, Whitling approximated the height difference to be about one inch. Additionally, in the photographs provided by appellant, taken by her nephew shortly after the incident, the vertical height difference is shown to be less than two inches.

{¶56} As discussed in detail above, appellant also argues attendant circumstances elevate the defect to an unreasonably dangerous condition. Appellant contends this case is analogous to *Cash, Hill, and Neura*, in which courts found attendant circumstances provided a genuine issue of material fact as to the two-inch rule. However, we find these cases distinguishable from the instant case. In *Cash*, 66 Ohio St.2d 310, 421 N.E.2d 1275 (1981), the Ohio Supreme Court found where a depression is twelve to fourteen inches wide, a pedestrian who approaches an intersection in a major city had his attention diverted by traffic signal lights, surrounding vehicular traffic, and other pedestrian traffic and these conditions would likely tend to increase the dangers of such a defect in this location. The attendant circumstances present in *Cash* are not present in this case. In this case, appellant testified it was still light out, there was no precipitation,

she had no visibility problems, she could see where she was walking, nothing obstructed her view of the ramp or threshold, she successfully negotiated the step up with her right foot, and there was "nothing to distract her" as she was walking towards the door. See *Gurcarkowski v. McPeek Funeral Home*, 5th Dist. Licking No. CA-3479, 1990 WL 15752.

**{¶57}** *Neura v. Goodwill Industries*, 9th Dist. Medina No. 11CA0052-M, 2012-Ohio-2351 is distinguishable from the instant case because the plaintiff in that case testified her full shopping cart obstructed her view of the ground. In this case, appellant testified nothing obstructed her view of either the ramp or threshold. *Hill v. Mullins*, 2nd Dist. Montgomery No. 27127, 2017-Ohio-1302 is also distinguishable from the instant case, as the court in that case did not find attendant circumstances to be a person talking to her, but found a genuine issue of material fact as to attendant circumstances because plaintiff testified about a wall obscuring her vantage point of the hazard. In fact, the court noted, "walking behind someone while that person is conversing and/or gesturing is not an unusual circumstance." *Id.* In this case, appellant testified she could look down and see where she was putting her foot, could see the ramp, could see the runner, and the ramp and threshold were capable of observation within her field of vision.

**{¶58}** Accordingly, we find reasonable minds could only conclude the defect was trivial and not rendered a substantial one because of any attendant circumstances. See *Callentine v. Mill Investments*, 5th Dist. Tuscarawas No. 2017 AP 06 0014, 2017-Ohio-8634. We find the trial court properly applied the trivial defect rule to bar appellant's negligence claim as no duty exists where an alleged defect is minor or insubstantial. Appellant's second, fourth, and sixth assignments of error are overruled.

**{¶59}** Based on the foregoing, appellant's assignments of error are overruled.

{¶60} The May 17, 2017 judgment entry of the Stark County Court of Common Pleas is affirmed.

By Gwin, P.J., and

Wise, Earle, J., concur;

Hoffman, J., dissents

*Hoffman, J., dissenting*

{¶61} I respectfully dissent from the majority opinion.

{¶62} While I agree there were no "attendant circumstances" in this case to justify an exception to the open-and-obvious rule, I find reasonable minds, when considering the evidence in the light most favorable to Appellant as required by Civ.R. 56, could differ as to whether the alleged danger was, in fact, open and obvious.

{¶63} Due to the "give" [flexibility] of the mat the top of the ramp and the fact the mat covered the offset between the top of the ramp and the tile floor, a reasonable trier-of-fact could find a lip was created by stepping on the mat near the top of the ramp. Given the fact a person's normal gate is to put one foot ahead of the other when walking, it is not necessarily inconsistent Appellant's right foot may have safely stepped over the top of the ramp while Appellant's left foot caught on the lip created by the "give" of the mat where the gap existed. I find sufficient evidence exists to create a genuine dispute as to whether the alleged hazard was open and obvious.

{¶64} I further disagree with the trial court's and majority's determination no liability exists because the "two-inch rule" bars recovery, finding the height differential was "trivial." While the height differential may have been trivial, all the cases applying the two-inch rule involve situations where the height differential was observable.

{¶65} Because the black mat covered the gap between the top of the ramp and the tile floor, the height differential caused by the give in the mat was not observable. As such, I find the two-inch rule inapplicable when the gap is not open to observation but rather covered or obscured.

[Cite as *McCoy v. Wasabi House, L.L.C.*, 2018-Ohio-182.]